1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

FREDERICK JAMES BEATTY,

Plaintiff,

v.

PHH MORTGAGE CORPORATION, et al.,

Defendants.

Case No.  19-cv-05145-DMR

**ORDER ON DEFENDANTS' MOTION TO DISMISS**

Re: Dkt. No. 18

This case arises from a mortgage and foreclosure dispute.  Plaintiff Frederick James Beatty filed a complaint in Sonoma County Superior Court on July 17, 2019. [Docket No. 1-1.] Defendants PHH Mortgage Corporation ("PHH"), Western Progressive, LLC ("WP"), and Deutsche Bank Trust Company Americas as Trustee for RALI 2006-QA11 (sued as Deutsche Bank National Trust Company) ("Deutsche Bank") removed the case to this court based on diversity jurisdiction. [Docket No. 1.]  On August 23, 2019, Defendants filed a motion to dismiss Beatty's initial complaint. [Docket No. 8.]  On October 10, 2019, the court held a hearing and granted the motion to dismiss on the record. [Docket No. 15.]  Beatty filed a first amended complaint on October 24, 2019. [Docket No. 16 ("FAC").]  Defendants now move to dismiss Beatty's FAC. [Docket Nos. 18 ("Mot."), 22 ("Reply").]  Beatty timely opposed. [Docket No. 21 ("Opp.").]  This matter is suitable for determination without oral argument. Civil L.R. 7-1(b).  Having considered the parties' submissions, the court grants in part and denies in part Defendants' motion to dismiss.

I.      **BACKGROUND**

The factual background of the case is taken from Beatty's first amended complaint.  Beatty alleges that he has owned the property located at 1601 Culpepper Drive, Petaluma, CA 94956 (the "Property") since around 2005.  FAC ¶ 10.  In purchasing the Property, Beatty executed a promissory note and a deed of trust.  *Id.*; *see also* Docket No. 19, Defendant's Request for Judicial

Notice in Support of Motion to Dismiss ("RJN"), Ex. 1 ("Deed of Trust"). Deutsche Bank is the beneficiary of the loan, PHH is the servicer, and WP is the trustee. *Id.*

According to Beatty, Defendants sold the Property to a third party at a foreclosure sale approximately one year ago, but subsequently rescinded the sale. FAC ¶ 11. Beatty states that after the sale was rescinded, he was "misinformed about the procedure for making payments while involved in a lawsuit."[1] *Id.* ¶ 12. In June 2019, Beatty spoke with "someone at PHH" and asked to "make all of the payments due at that time in order to bring the loan out of foreclosure." *Id.* ¶ 13. PHH directed him to contact another entity, Aldridge Pite LLP ("AP"), to make his reinstatement payment. *Id.* ¶ 13. Beatty alleges that he had to call AP "several times over the course of a week" before he finally spoke to someone on June 18, 2019. *Id.* ¶ 15. The AP representative allegedly informed Beatty that they could not find the file on his loan. *Id.* ¶ 16. Beatty called PHH again to relay this information, and PHH allegedly informed him that WP (not AP) was assigned to the loan. *Id.* ¶¶ 17-18. Beatty alleges that PHH gave him this information on June 26, 2019. *Id.* ¶ 18.

Beatty states that he immediately contacted WP to ask to reinstate his loan, but WP refused on the basis that the foreclosure sale was less than five days away. FAC ¶ 19. Beatty then called PHH again and PHH informed him that he could only reinstate his loan if he obtained a reinstatement quote from WP. *Id.* ¶ 21. When Beatty attempted to get the quote from WP, however, WP told him that PHH had the information regarding reinstatement. *Id.* Beatty alleges that he found a statement from PHH from May 2019 that contained a reinstatement quote of $29,498.35, which stated the reinstatement amount was good until July 1, 2019. *Id.* ¶¶ 22-23. He asked PHH if he could pay that amount to reinstate his loan and PHH initially said that he could pay the amount listed on the May 2019 statement. *Id.* ¶ 22. However, PHH later told him that he must make the June payment also. *Id.* According to Beatty, the conflicting information meant that "PHH did not know what the correct reinstatement amount was." *Id.*

PHH instructed Beatty to wire $29,498.35 to PHH,[2] which he did on June 26, 2019. FAC ¶

---

[1] The FAC uses the passive voice so it is unclear which of the Defendants, if any, misinformed Beatty about the payment process. Beatty also does not describe the allegedly incorrect information he received.

[2] The series of events as alleged in the FAC is unclear. For example, it is not clear why Beatty paid the quoted amount when he alleges that PHH told him to pay the June 2019 payment as well.

24. Beatty alleges that PHH confirmed it received the funds and told him that the Property was "out of foreclosure." *Id.* ¶¶ 25. Despite PHH's representation, it sold the property at foreclosure on June 27, 2019. *Id.* ¶ 26. On June 28, 2019, two days after PHH told Beatty that the Property was "out of foreclosure," Beatty received "approximately a dozen harassing phone calls telling him that the Property was sold."[3] *Id.* ¶ 27. Beatty then called both PHH and WP, both of whom allegedly told him that he needed to contact the other. *Id.* ¶ 30. According to Beatty, WP suggested that the three of them (Beatty, PHH, and WP) have a call together to resolve the issue, but WP hung up when PHH picked up the phone. *Id.* ¶ 31. At some unspecified time, PHH told Beatty that he "still had the house and that no Trustee's Deed Upon Sale ha[d] been recorded"; however, PHH also told Beatty that he needed to make the July 2019 payment. *Id.* ¶ 32. Beatty claims that PHH would not accept that payment before July 5, 2019. *Id.* ¶ 33. When Beatty called PHH on July 5, 2019 to make the payment as instructed, PHH allegedly told him that it still could not accept the payment and that he must call back on July 8, 2019. *Id.* ¶ 34.

According to Beatty, he called PHH every day between July 8, 2019 through July 12, 2019 (sometimes multiple times per day) in order to make the payment, but PHH refused to accept it. FAC ¶ 35. He attempted to make the payment online, but the website[4] would not allow him to make the payment and indicated that he was current on his loan. *Id.* On July 10, 2019, PHH told Beatty he had to make the July 2019 payment through WP. *Id.* ¶ 36. Beatty states that he called WP "every day, over a dozen times, from Wednesday, July 10, 2019 through Friday, July 12, 2019," and each time he was put on hold for ten minutes or more and eventually was forwarded to a voicemail box that was full. *Id.* ¶ 37.

With respect to damages, Beatty alleges that he was "unable to rent his rental unit" for this period of time "because Defendants left him in a state of uncertainty about whether or not he would lose his home."[5] FAC ¶ 38. He states that Defendant's wrongful conduct caused damage to his credit, which precludes Beatty from receiving investment loans to support his small business. *Id.* ¶

---

[3] At the hearing on Defendants' original motion to dismiss, Beatty's counsel represented that Beatty was contacted by the purchasers of his property.
[4] The court infers that "the website" is PHH's payment website.
[5] It is unclear whether the rental unit is part of the Property or a separate property.

39.  Beatty further alleges that he "suffered the loss of his property, extreme stress and anxiety, stress to his marriage and personal life, and lost an immense amount of time and resources" as a result of Defendants' conduct.  *Id.* ¶ 40.  In addition to the above damages, Beatty states that he lost income because of the events underlying the complaint.  *Id.*

Beatty brings five claims against Defendants, including breach of contract; breach of the covenant of good faith and fair dealing; negligence; wrongful foreclosure; and violation of California Business and Professions Code § 17200 *et seq.* ("UCL").  Defendants move to dismiss all claims on the basis that they fail to state a claim on which relief can be granted.

## II.   DEFENDANTS' REQUEST FOR JUDICIAL NOTICE

Defendants filed a request for judicial notice in support of their motion to dismiss.  The RJN contains the following documents, all but one of which has been recorded in the Sonoma County Recorder's Office:

1.   Deed of Trust, recorded November 20, 2006;

2.   Assignment of Deed of Trust, recorded August 10, 2012;

3.   Notice of Default, recorded April 22, 2010;

4.   Notice of Rescission of Default, recorded October 29, 2010;

5.   Notice of Default, recorded December 16, 2014;

6.   Notice of Rescission of Default, recorded October 4, 2016;

7.   Notice of Default, recorded January 31, 2017;

8.   Notice of Rescission of Default, recorded August 4, 2017;

9.   Notice of Default, recorded March 21, 2018;

10.  Notice of Rescission of Default; recorded August 14, 2018;

11.  Notice of Default; recorded January 30, 2019;

12.  Notice of Trustee's Sale, recorded May 14, 2019;

13.  Notice of Rescission of Default, recorded July 26, 2019

14.  Transaction History Report regarding Property (Defendants request that the court take judicial notice of the fact that no trustee's deed upon sale has been recorded against the Property)

The court grants Defendants' RJN with respect to document numbers 1-2 and 11-13. The other documents are not relevant to the dispute and therefore the request as to those documents is denied as moot.

## III.   LEGAL STANDARD FOR RULE 12(B)(6) MOTIONS

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001), overruled on other grounds by *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

As a general rule, a court may not consider "any material beyond the pleadings" when ruling on a Rule 12(b)(6) motion. *Lee*, 250 F.3d at 688 (citation and quotation marks omitted). However, "a court may take judicial notice of 'matters of public record,'" *id*. at 689 (citing *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)), and may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith*, 307 F.3d at 1125-26. The court need not accept as true allegations that contradict facts that may be judicially noticed. *See Mullis v. U.S. Bankr. Court*, 828 F.2d 1385,

1388 (9th Cir. 1987).

## IV.     DISCUSSION

The complaint brings five claims for relief: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) negligence; (4) wrongful foreclosure; and (7) violation of the UCL. Defendants move under Rule 12(b)(6) to dismiss all of Beatty's claims.

### A.     Breach of Contract

Under California law, the elements of a breach of contract claim are "1) the existence of the contract; 2) performance by the plaintiff or excuse for nonperformance; 3) breach by the defendant; and 4) damages." *Sutcliffe v. Wells Fargo Bank, N.A.*, 283 F.R.D. 533, 549 (N.D. Cal. 2012) (citing *First Commercial Mortgage Co. v. Reece*, 89 Cal. App. 4th 731, 745 (2001)). Beatty's first claim asserts that Defendants breached the express terms of the contract, and the second claim alleges violations of the terms implied by the covenant of good faith and fair dealing. These are addressed in turn.

### 1.     Express Contract Terms

The complaint alleges that Defendants breached paragraph 19 of the Deed, which provides: "Upon reinstatement by Borrower, this security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred." Deed of Trust ¶ 19; *see* FAC ¶ 44. Beatty contends that Defendants violated this provision by selling the property at foreclosure after Beatty reinstated the loan. FAC ¶ 45.

Beatty omits other relevant provisions in paragraph 19. Specifically, that paragraph requires the borrower to "meet[] certain conditions" before he is eligible to invoke his right to prevent enforcement of the Deed:

> Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument.

Deed of Trust ¶ 19. In order to reinstate the loan as provided by paragraph 19, the borrower must complete the following requirements:

> (a) pay[] Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cure[] any default of any other covenants or agreements; (c) pay[] all expenses incurred in enforcing this Security Instrument . . .; and (d) take[] such actions as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged.

*Id.*

Defendants argue that Beatty failed to comply with the requirements listed in paragraph 19 because he did not pay the money due under the contract prior to five days before the sale of the property. Mot. at 4. According to the complaint, Beatty tendered the amount due to PHH on June 26, 2019, the day before the sale occurred. FAC ¶ 24. Neither the complaint nor the opposition dispute that Beatty did not bring the loan current more than five days before the foreclosure sale. Because the language of the Deed expressly conditions the right to reinstatement on the borrower's completion of their obligations, and because the complaint does not allege that Beatty complied with the Deed's requirements, Beatty has failed to allege that Defendants breached the express terms of the contract.

Defendant's motion to dismiss the first claim is granted.

## 2. Implied Contract Terms

Under California law, "[e]very contract imposes on each party a duty of good faith and fair dealing in each performance and its enforcement." *Herskowitz v. Apple, Inc.*, 301 F.R.D. 460, 473 (N.D. Cal. 2014) (quoting *Carson v. Mercury Ins. Co.*, 210 Cal. App. 4th 409, 429 (2012)). In order to state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must allege the following elements: "(1) the parties entered into a contract; (2) the plaintiff fulfilled his obligations under the contract; (3) any conditions precedent to the defendant's performance occurred; (4) the defendant unfairly interfered with the plaintiff's rights to receive the benefits of the contract; and (5) the plaintiff was harmed by the defendant's conduct." *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 968 (N.D. Cal. 2010). Courts turn to the duty of good faith to "fill gaps and qualify or limit rights and duties otherwise arising under rules of law and specific contract language." *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 684 (1988) (quoting Summers, *The General Duty of Good Faith—Its Recognition and Conceptualization*, 67 Cornell L. Rev. 810,

812 (1982)).  In evaluating an implied covenant claim, the court must consider whether a party's conduct, though not prohibited by the express terms of the contract, is "nevertheless contrary the contract's purposes and the parties' legitimate expectations."  *Carma Developers (Cal.), Inc. v. Marathon Dev. California, Inc.*, 2 Cal. 4th 342, 373 (1992).  However, the covenant may not be read to contradict the express terms of an agreement.  *Id.* at 374.

Beatty alleges that Defendants breached the covenant of good faith and fair dealing by failing to provide him with "accurate information to allow him to exercise his right of reinstatement."  FAC ¶ 53.  He asserts that Defendants' failure to furnish accurate information "materially hindered his ability to perform under the contract and thereby caused his breach thereof and subsequent loss of any benefits thereunder."  *Id.* ¶ 54.  In addition, Defendants allegedly breached the covenant to accept Beatty's "fully and timely monthly payment."  *Id.* ¶ 55.

The Deed does not contain an express term that Defendants are required to furnish accurate information about payments owed, nor does it contain any provision that explicitly requires Defendants to accept full and timely payments.  However, the implied terms Beatty alleges also do not contradict the written terms of the agreement.  Paragraph 19 contains detailed requirements a borrower must meet in order to reinstate his loan and it is reasonable to expect that a lender will not hinder the borrower's attempts to comply with those provisions.  The reinstatement provision might fairly imply that the lender must furnish information within its control to the borrower when that information is necessary for the borrower to reinstate his loan.  The amount due, for example, should be readily available to the lender but may not be available to the borrower.  Allowing the lender to withhold that information could frustrate the purpose of paragraph 19, which is to provide a remedy to defaulting borrowers.  Similarly, the purpose of the reinstatement provision would be completely undermined if the lender were allowed to refuse full and timely payments.

Defendants do not contest that the terms suggested by Beatty are fairly implied within the contract; they instead argue that they did not violate those terms.  Mot. at 5.  With respect to the implied requirement that Defendants furnish accurate information about payments owed, Defendants assert that Beatty already had the necessary information to reinstate his loan because he received a statement with the amount due in May 2019.  *Id.* at 5; *see* FAC ¶ 23.  The letter itself

stated that the reinstatement quote was valid until July 1, 2019. FAC ¶ 23. Therefore, Defendants argue, Beatty had the necessary information to reinstate his loan within the time limit specified by the Deed. Mot. at 5.

Defendants' argument eschews other relevant allegations in the complaint. Beatty alleges that he attempted to make a payment sometime before June 18, 2019 (more than five days prior to the foreclosure sale), but PHH incorrectly directed him to AP. FAC ¶ 13. He also asserts that PHH did not tell him which entity would accept the payment until the day before the foreclosure sale. *Id.* ¶ 18. Presumably, Beatty would have to know the correct payee in order to tender the reinstatement payment. Further, while the complaint does allege that Beatty received a May 2019 statement with the amount owed, Beatty also claims that PHH verbally instructed him that he would have to make the June 2019 payment in addition to the amount listed on the May 2019 statement. *Id.* ¶ 22. Because the statement itself represented that the quote was valid until July 1, 2019, PHH's alleged representations to the contrary could reasonably create confusion as to the correct amount owed. In sum, Beatty has adequately alleged that PHH failed to furnish the information necessary to exercise his right to reinstatement under the contract.

Beatty also alleges that PHH violated its obligation to accept full and timely payments. He asserts that PHH initially him he could make the July 2019 payment on July 5, 2019. FAC ¶ 33. When Beatty attempted to pay on that date, PHH then informed him he must call back on July 8, 2019. *Id.* ¶ 34. Beatty claims that he tried to make the payment at that later date, but PHH again refused to accept it. *Id.* ¶ 35. PHH finally told Beatty that he had to make the July 2019 payment through WP. *Id.* ¶ 36. According to Beatty, he "called WP every day, over a dozen times, from Wednesday, July 10, 2019 through Friday, July 12, 2019" and that every time he called, he was put on hold before his call was forwarded to a voicemail box that was full. *Id.* ¶ 37.

Defendants argue that they did not breach their obligation to accept payments. They point to the Rescission of Notice of Default, dated July 24, 2019 and recorded July 26, 2019, and state that the Rescission "would only be executed and recorded after the Loan was brought current." Mot. at 5; *see id.*, Ex. 13. Neither party is explicit on this point, but the court infers that Beatty was eventually able to make the July 2019 payment, which allowed the Rescission to be executed and

recorded. However, Defendants' argument is not convincing. They essentially posit that they are permitted to refuse a payment and give inaccurate and conflicting information over a period of at least a week as long as they eventually accept it. The purpose of the contract would be undermined by permitting this course of conduct; a borrower can reasonably expect the ability to make full and timely payments without enduring prolonged uncertainty and confusion. Accordingly, Beatty has adequately alleged that Defendants breach their obligation to accept full and timely payments.[6]

### 3. Damages

For his two contract claims, Beatty alleges that he suffered credit damage, loss of income, loss of rental income, loss of his home, and emotional distress.[7] FAC ¶¶ 48, 56. Defendants seek to dismiss Beatty's first and second causes of action on the basis that he does not properly allege damages. Mot. at 6. For the reasons described above, Beatty's breach of contract claim is dismissed on other grounds, and so the court evaluates damages only as to the breach of covenant claim.

First, Defendants assert that Beatty is not entitled to claim damage to his credit. They claim that any damage to his credit resulted from his breach of the payment obligations on the loan and not from the foreclosure sale, which they assert was not reported on his credit record. Mot. at 6. This argument goes to the merits. Beatty has adequately alleged that Defendants breached the covenant of good faith and fair dealing by failing to provide him with accurate information to reinstate his loan and by refusing to accept his July 2019 payment. Whether he can prove that Defendants caused damage to his credit is a question for another day.

---

[6] It is unclear whether the FAC alleges a breach of this obligation solely based on the July 2019 payment or whether it is also meant to encompass Defendants' conduct in 2018. For the earlier events, Beatty summarily alleges that he was "misinformed about the procedure for making payments while involved in a lawsuit." FAC ¶ 12. He does not explain how he was misinformed, allege that Defendants were responsible for his misunderstanding, or clearly assert that Defendants failed to accept full and timely payments prior to July 2019. The court previously noted the prior complaint's vague allegations regarding past payments in the hearing on Defendants' first motion to dismiss and instructed Beatty to amend his complaint to clarify those allegations. Beatty added no additional facts as to prior payments in his amended complaint. Therefore, to the extent that Beatty's breach of covenant claim is based on Defendants' previous failures to accept full and timely payments, that portion of the claim is dismissed with prejudice.

[7] Defendants argue that Beatty cannot recover attorneys' fees as damages. Mot. at 6. Beatty appears to concede this point but asserts that he is not seeking attorneys' fees as damages. Opp. at 9. Rather, he is seeking fees under the two-way fee shifting provision in the parties' contract. *Id.* Defendants do not argue that Beatty is not entitled to attorneys' fees under the terms of the contract. Therefore, Beatty has alleged that attorneys' fees are a proper remedy in this case.

10

Second, Defendants argue that Beatty cannot recover damages for loss of income or rental income because "any alleged loss in income resulted from Plaintiff's failure to reinstate the Loan before the statutory deadline." Mot. at 9. This argument also fails. Beatty has alleged that as a result of Defendants' conduct in providing inaccurate information and refusing to accept his July 2019 payment, he "lost an immense amount of time and resources." FAC ¶ 40. The complaint describes the amount of time Beatty expended because of Defendants' alleged breaches and is enough to plead that he lost income as a result. Beatty also alleges that he lost rental income because he could not rent out his rental while it was unclear whether he would lose his home. *Id.* ¶ 38. Whether Beatty actually suffered economic damages is a question of fact, but as a pleading matter, Beatty has adequately alleged loss of income.

Third, Defendants assert that Beatty did not lose the property because the foreclosure sale and Notice of Default were rescinded. *Id.*, Ex. 13. In the hearing on Defendants' first motion to dismiss, the court noted that the complaint was vague on this claim for damages because it appeared that Beatty never lost possession of the Property. Beatty's counsel represented that Beatty had not lost possession of the house but that the foreclosure sale went forward and Beatty suffered damages as a result. Defendants responded then and in the current motion that the trustee's deed upon sale was never recorded[8] and therefore the sale was not perfected. *See* Reply at 2. They cite California Civil Code 2924h(c), which states that a trustee's sale is deemed perfected if the deed is recorded within 15 calendar days after the sale. Cal. Civ. Code 2924h(c). Defendants appear to imply that Beatty could not have lost his home because the deed was not recorded within 15 days of the sale and the sale cannot now be perfected.

Section 2924h(c) also provides that "a trustee's sale shall be deemed final upon the acceptance of the last and highest bid." Cal. Civ. Code 2924h(c). "The concepts of 'finalizing' and 'perfecting' a sale are different." *In re Engles*, 193 B.R. 23, 27 (Bankr. S.D. Cal. 1996). Although these concepts appear to be central to this case, neither party provided an analysis of section

---

[8] Defendants request that the court take judicial notice of the fact that no deed upon sale was ever recorded. As noted above, the court denies this request as moot. As explained below, whether the deed was recorded is irrelevant to the analysis because an interest in a property is transferred upon conclusion of the foreclosure sale, not only upon perfection.

2924h(c) and its impact on their positions, instead leaving it to the court to figure out. The distinction between "finalizing" and "perfecting" arises because "[t]itle to a property is both legal and equitable." *In re Reginald Escobar Silva & Carlita Marie Silva*, 2015 WL 13345614, at *5 n. 6 (C.D. Cal. Apr. 24, 2015). Equitable title passes to a foreclosure purchaser upon conclusion of a trustee's sale, but legal title remains with the debtor until perfection of the deed upon sale. *Id.*; *see Engles*, 193 B.R. at 26 ("[A] purchaser receives equitable title at a [foreclosure] sale, but legal title remains in a debtor . . . .") (internal quotation marks and citations omitted); *In re RW Meridian LLC*, 564 B.R. 21, 30 (B.A.P. 9th Cir. 2017) ("In an involuntary sale such as foreclosure, equitable title is transferred to the purchaser at the foreclosure auction with acceptance of the highest bid and it is at that time a trustee's sale is 'complete.'"). Equitable title is a "beneficial interest" and "one stick in the bundle of full legal rights to real property." *RC Royal Dev. & Realty Corp. v. Standard Pac. Corp.*, 177 Cal. App. 4th 1410, 1419 (2009). Based on the court's own cursory review of the caselaw, it appears that equitable title to the Property passed to the foreclosure purchaser upon conclusion of the foreclosure sale. The parties do not explain the legal effect of transferring equitable title. *See Lueras v. BAC Home Loans Servicing, LP*, 221 Cal. App. 4th 49, 61 (2013) (declining to find that a borrower's claims were mooted when a foreclosure sale was allegedly rescinded because neither party "briefed the legal consequences of a rescission on possible future attempts to foreclose"). Therefore, as a pleading matter, Beatty has sufficiently alleged that he lost some interest in the Property and is entitled to damages as a result.

Finally, Defendants argue that Beatty is not entitled to emotional distress damages arising from a breach of contract claim. Mot. at 6. This argument is addressed below in connection with Beatty's negligence claim.

In sum, Beatty has adequately alleged damages as a result of Defendants' alleged breach of the covenant of good faith and fair dealing. Defendants' motion to dismiss that claim is denied.

**B.    Negligence**

Under California law, "[t]he elements of negligence are: (1) defendant's obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks (duty); (2) failure to conform to that standard (breach of the duty); (3) a reasonably close connection

between the defendant's conduct and resulting injuries (proximate cause); and (4) actual loss (damages)." *Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009) (quoting *McGarry v. Sax*, 158 Cal. App. 4th 983, 994 (2008)).

Defendants argue that Beatty's negligence claim fails because he did not adequately plead either that Defendants owed him a duty or that Defendants' conduct caused Beatty's damages, if any. Defendants also invoke the economic loss rule, contending that Beatty cannot seek tort damages because the relationship between the parties is governed by contract law.

### 1. Duty

California courts have held that "as a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark v. Heart Fed. Sav. & Loan Assn.*, 231 Cal. App. 3d 1089, 1096 (1991). The general rule applies to loan servicers, such as PHH. *See Lingad v. Indymac Fed. Bank*, 682 F. Supp. 2d 1142, 1149-50 (E.D. Cal. 2010). "[A]bsent special circumstances . . . a loan transaction is at arms-length and there is no fiduciary relationship between the borrower and lender." *Oaks Mgmt. Corp. v. Superior Court*, 145 Cal. App. 4th 453, 466 (2006). This rule has also been applied in California federal courts. *See, e.g.*, *Benson v. Ocwen Loan Servicing, LLC*, 562 F. App'x 567, 570 (9th Cir. 2014) ("The duty of care imposed on construction lenders . . . does not apply in the residential loan context."); *Taylor v. Bosco Credit, LLC*, No. 18-cv-06310-JSC, 2018 WL 6511150, at *4 (N.D. Cal. Dec. 11, 2018) (finding that a loan servicer did not have a duty of care to a mortgagor); *Villanueva v. Select Portfolio Servs., Inc.*, No. 14-cv-05238-BLF, 2015 WL 2199340, at *2 (N.D. Cal. May 11, 2015) (same).

Courts in this district have applied a six-factor test laid out in *Biakanja v. Irving*, 49 Cal. 2d 657, 650 (1958) to determine whether a duty is owed under a narrow exception to the general rule ("*Biakanja* factors"). These factors are:

> (1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm.

*Biakanja v. Irving*, 49 Cal. 2d at 650. California federal courts have largely addressed the question

of duty in the context of loan modifications, with varying results. *See Rowland v. JPMorgan Chase Bank, N.A.*, No. 14-cv-00036-LB, 2014 WL 992005, at *8 (N.D. Cal. Mar. 12, 2014) (citing cases).

### a. *Alvarez* and *Lueras*

One line of cases stems from *Lueras*. There, a home purchaser requested a loan modification from the lender when he and his wife began experiencing financial hardship. *Lueras*, 221 Cal. App. 4th at 56. The purchaser submitted to the lender all information required to determine whether he qualified for a loan modification. *Id.* at 58. While he was waiting for a decision on his application, the trustee served him with a notice of default. *Id.* He contacted the lender several times asking about the status of his loan modification application and was told at least once that his application had been approved, pending approval by the Federal National Mortgage Association ("Fannie Mae"). *Id.* He never received notice from either Fannie Mae or the lender that his application had been denied, and his home was sold in a foreclosure sale. *Id.* at 59. He brought a complaint against the lender, alleging a cause of action for negligence. The superior court granted the defendants' motion to dismiss the negligence claim on the basis that they did not owe plaintiff a duty of care. On review, the appellate court cited the general rule that a financial institution does not owe a duty of care to a borrower when the lender does not act outside the scope of "its conventional role as a mere lender of money." *Id.* at 63 (quoting *Nymark*, 231 Cal. App. 3d at 1096). Using the *Biakanja* factors, the court concluded that the lender did not owe the plaintiff a duty of care to modify his loan. *Id.* at 63-64. It found that renegotiating loan terms "falls squarely within the scope of a lending institution's conventional role as a lender of money" and the lender's obligations to "offer, consider or approve loan modifications" arises solely from the parties' contracts and relevant statutes, not from a common law duty. *Id.* at 67. However, the court also determined that there is a duty to "not make negligent misrepresentations of fact." *Id.* at 68. It implied that the plaintiff may have a cause of action for negligence if he alleged that the defendants "caused or exacerbated his initial default by negligently servicing the loan." *Id.* Because the borrower had alleged that the lender misrepresented the status of the loan application and the date and time of the foreclosure sale, the court reversed the judgment against him so that he could amend the complaint to plead a cause of action for negligent misrepresentation. *Id.* at 68-69.

14

The other line of cases comes from *Alvarez v. BAC Home Loans Servicing, L.P.*, 228 Cal. App. 4th 941 (2014). In that case, the plaintiff homeowners alleged that a lender and loan servicer of their residential mortgages failed to review their loan modification applications in a timely manner; foreclosed on their properties while they were under consideration for a modification; and mishandled the applications by relying on incorrect information. 228 Cal. App. 4th at 945. For example, the defendants rejected one of the applications based on their mistake about the borrower's monthly gross income. *Id. Alvarez* examined *Lueras* and agreed with its conclusion that financial institutions do not owe borrowers a common law duty to "offer, consider or approve" a loan modification. *Id.* at 946 (quoting *Lueras*, 221 Cal. App. 4th at 67). However, the court also noted that *Lueras* granted the plaintiff leave to amend to allege a cause of action for negligent misrepresentation. *Id.* Applying the same principle, the court found that the loan modification transaction was "intended to affect the plaintiffs and it was entirely foreseeable that failing to timely and carefully process the loan modification applications could result in significant harm to the applicants." *Id.* at 948 (applying the *Biakanja* factors). The court accordingly held that the plaintiffs sufficiently alleged that defendants owed the plaintiffs a duty of care to properly review their applications. *Id.* at 951.

The apparent conflict between *Lueras* and *Alvarez* was recently examined in *Sheen v. Wells Fargo Bank, N.A.*, 38 Cal. App. 5th 346 (Ct. App. 2019), which is the key case relied upon by Defendants in this case. There, a homeowner obtained a first mortgage through the defendant lender, which was secured by a deed of trust. *Id.* at 348. He subsequently obtained two junior loans through the same lender and defaulted on both. *Id.* at 348-49. With respect to one of the junior loans, the borrower received correspondence from the lender that it was placing his account with an "outside collection agency." *Id.* at 349. The borrower interpreted the letter to mean that the mortgage had been converted into an unsecured loan and the outstanding debt would be collected through "standard collection practices" rather than foreclosure. *Id.* A representative of the lender also called his wife and told her there would not be a foreclosure sale. *Id.* That mortgage was later sold to a different investment firm, which foreclosed on the house. *Id.* at 350. The borrower sued the original lender under a negligence theory, alleging that the lender "owed him a duty of care to

15

1   process, review, and respond carefully and completely to the loan modification applications" and to

2   "refrain from engaging in unfair and offensive business practices that confused [him] and prevented

3   him from pursuing all options to avoid foreclosure." *Id.* The trial court sustained the defendant's

4   demurrer, finding that the lender did not owe a tort duty of care to the borrower. *Id.* at 351. On

5   appeal, the court noted that California state courts were divided in applying *Lueras* and *Alvarez* in

6   the loan modification context, with some courts following *Lueras* in finding that a lender does not

7   owe a borrower a duty of care and some citing *Alvarez* in finding a duty. 38 Cal. App. 5th at 353.

8   After reviewing those cases and the subsequent conflicting case law, the court disagreed with

9   *Alvarez* and held that "a lender does not owe a borrower a tort duty of care during a loan modification

10  negotiation." *Id.* at 352. It accordingly affirmed the trial court's dismissal of the negligence count.

11       *Sheen* is not persuasive in this case. Although it putatively adopted *Lueras*, it did not address

12  or even mention *Lueras*'s holding that "[t]he law imposes a duty not to make negligent

13  misrepresentations of fact." *See Lueras*, 221 Cal. App. 4th at 68. Nor did *Sheen* acknowledge that

14  *Lueras* held the door open for a negligence claim based on "negligent servicing," where a servicer's

15  conduct "caused or exacerbated [the] initial default." *See id.* A handful of courts (including the

16  Ninth Circuit, in unpublished opinions) have since recognized the viability of a negligence claim

17  based on negligent servicing, although none have analyzed the theory outside of the loan

18  modification context. *See, e.g.*, *Deschaine v. IndyMac Mortg. Servs.*, 617 F. App'x 690, 693 (9th

19  Cir. 2015) (recognizing a possible exception for conduct that causes or exacerbates a default);

20  *Anderson v. Deutsche Bank Nat. Tr. Co. Americas*, 649 F. App'x 550, 552 (9th Cir. 2016) (same);

21  *Vazquez v. Wells Fargo Bank, N.A.*, 2016 WL 7486605, at *3 (C.D. Cal. Oct. 19, 2016); *In re

22  Residential Capital, LLC*, 523 B.R. 24, 48–49 (Bankr. S.D.N.Y. 2014) (dismissing a borrower's

23  negligence claim because the plaintiff "failed to provide evidence that it was the [d]ebtors' conduct

24  that led her to default on her [l]oan") (applying *Lueras*). The court undertakes that analysis now.

25                      **b.      Negligent Servicing Claim**

26       Beatty alleges that Defendants, as the servicer and beneficiary of the loan, have a duty to

27  provide him with accurate information regarding reinstatement and payments. He argues that the

28  *Biakanja* factors weigh in favor of imposing a duty of care on Defendants because "[m]onthly

payments, reinstatement, and foreclosure are clearly intended to affect Plaintiff, it is readily foreseeable that he would be harmed by Defendants' refusal to accept his payments and to stop the foreclosure sale, he was in fact injured as a direct result of this incompetent, and there is a legitimate policy interest in preventing future harm from such actions." Opp. at 14-15. Defendants do not address the *Biakanja* factors in their reply.

Under the first *Biakanja* factor, the reinstatement procedures provided by the Deed and California law are unquestionably intended to benefit the borrower. *See* Deed of Trust ¶ 19; Cal. Civ. Code § 2924c; *see also Magnus v. Morrison*, 93 Cal. App. 2d 1, 3 (1949) ("The purpose of the [reinstatement statute] [is] to save equities in homes, in many instances built up through years of monthly payments."). Likewise, the ability to make timely payments benefits both the borrower and the lender, as the borrower has an interest in avoiding default and disclosure. Beatty has alleged facts sufficient to meet the first factor.

The second and third *Biakanja* factors are also established here. With respect to the second factor, it is foreseeable that failure to provide accurate information during foreclosure proceedings can harm the defaulting borrower, as he is in immediate danger of losing his property. The third factor, the degree of certainty that the plaintiff suffered injury, is addressed above with respect to Beatty's alleged damages. For the reasons previously stated, the third factor is satisfied for the purposes of this motion.

The fourth *Biakanja* factor looks at the "closeness of the connection between defendant's conduct and the injury suffered." *Biakanja*, 49 Cal. 2d at 650. Beatty alleges that he lost an interest in his home as a result of the foreclosure sale, and that the sale would not have happened if Defendants provided him with accurate information about reinstating his loan. Similarly, Beatty alleges that Defendants failed to provide him with accurate information on making his July 2019 payment. His resulting uncertainty about the status of his housing allegedly caused him to lose income and rental income. These allegations are enough to plead a close connection between Defendants' alleged conduct and Beatty's injuries because the injury was a direct result of the conduct. *Vazquez*, 2016 WL 7486605, at *3 (finding a borrower stated a claim for negligence where the lender allegedly "frustrated his attempt to pay his arrears and avoid foreclosure").

17

The fifth factor examines "the moral blame attached to the defendant's conduct" and the sixth considers the "policy of preventing harm." *Biakanja v. Irving*, 49 Cal. 2d at 650. With respect to these factors, *Alvarez* noted that the modern loan servicing industry has "positive incentives to misinform and under-inform borrowers" because it allows servicers to "save money on customer service . . . [and] collect late fees and other penalties from confused borrowers." *Alvarez*, 228 Cal. App. 4th at 949 (quotations omitted). Borrowers also "cannot pick their servicers or fire them for poor performance." *Id.* (quotations omitted). Given the power imbalance between the parties, the potential for harm to the borrower, and the servicers' positive incentives to mislead, there is a strong public policy in imposing a duty of care on servicers during default and foreclosure proceedings.[9] Correspondingly, a servicer's failure to use due care incurs moral blame because of the potentially devastating harm that may result to a borrower.

In sum, the court finds that application of the *Biajanka* factors weigh in favor of imposing negligence liability under the specific facts of this case, which establish as a matter of pleading that the servicer's conduct "caused or exacerbated" a mortgage default and an ensuing foreclosure sale. *See Lueras*, 221 Cal. App. 4th at 68.

## 2. Economic Loss Rule

The California Supreme Court has cautioned against the "mere rote application" of the *Rowland* factors[10] in deciding whether an entity has a duty of care. *S. California Gas Leak Cases*, 7 Cal. 5th 391, 399 (2019) ("*Gas Leak Cases*"). Another pertinent consideration, the court explained, is the application of the "economic loss rule," which states that "economic losses not flowing from conventional injury to person or property, such as physical damage, are ordinarily not recoverable in tort." *Id.* at 397. The purpose of the economic loss rule is to carefully delineate between contract and tort law. *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1064 (N.D.

---

[9] The public policy considerations exemplify why loan servicing deserves a different analysis than loan modification. In the loan modification context, "imposing negligence liability for the mishandling of loan modification applications could be a disincentive to lenders from ever offering modification." *Ottolini v. Bank of Am.*, No. 11-cv-0477 EMC, 2011 WL 3652501, at *7 (N.D. Cal. Aug. 19, 2011). There are not comparable disincentives in the loan servicing context that would weigh against imposing negligence liability.

[10] The *Biakanja* factors are a "subset" of the *Rowland* factors. *Gas Leak Cases*, 7 Cal. 5th at 401.

Cal. 2012) ("Purely economic damages to a plaintiff which stem from disappointed expectations from a commercial transaction must be addressed through contract law; negligence is not a viable cause of action for such claims."). The rationale behind the economic loss rule is that "[c]onsumers can thus protect themselves from economic losses by negotiating the terms of the contract." *Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, No. 13-cv-1803-EMC, 2013 WL 4530470, at *4 (N.D. Cal. Aug. 26, 2013). However, a breach of contract may also be tortious if "some independent duty arising from tort law is violated." *UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*, 117 F. Supp. 3d 1092, 1103 (C.D. Cal. 2015) (quoting *Erlich v. Menezes,* 21 Cal. 4th 543, 554 (1999)); *see also Tasion*, 2013 WL 4530470, at *10 (citing cases).

In this case, Defendants argue that Beatty is precluded from recovering on his negligence claim because the economic loss rule prohibits the application of tort liability in a financial transaction. Mot. at 8 ("The economic loss doctrine is routinely applied to bar tort claims that are merely recast contract claims."). Beatty responds that the economic loss rule does not apply to injury to property. Opp. at 10-11; *see Gas Leak Cases*, 7 Cal. 5th 391. Defendants argue that Beatty did not suffer such loss because the sale of his home was rescinded and because he does not allege *physical* injury to the Property. Reply at 4.

The court previously found that Beatty has adequately pleaded that he lost an equitable interest in his home as a result of the foreclosure sale. As noted above, the parties did not explain the nature of the interest at stake; in fact, neither party even mentions the distinction between legal and equitable title. In support of their motion, Defendants summarily assert that Beatty did not suffer an injury to property but provide no authority that loss of equitable title constitutes a purely economic loss. *See* Reply at 4. As Defendants did not explain or support this argument, the court declines to reach the issue of whether the property loss allegedly suffered by Beatty constitutes an injury to property within the meaning of the economic loss rule.

### 3. Emotional Distress Damages

Beatty seeks emotional distress damages as a result of Defendants' alleged negligence. Compl. ¶ 57. "Recovery for emotional distress in negligence cases is generally not available unless malice, breach of a fiduciary duty, physical injury or impact, or some other unusually extreme or

outrageous circumstance, can be shown." *Varnado v. Midland Funding LLC*, 43 F. Supp. 3d 985, 990 (N.D. Cal. 2014) (quoting *Miranda v. Field Asset Servs.*, 2013 WL 3283701, at *5 (S.D. Cal. June 27, 2013)) (internal quotation marks and further citations omitted). Defendants argue that Beatty has failed to plead facts showing that any of those factors apply in this case. Mot. at 9-11.

The only authority Beatty offers on this point is *Miles v. Deutsche Bank Nat'l Tr. Co.*, 236 Cal. App. 4th 394 (2015), which he argues stands for the proposition that "all proximately caused damages" are available in tort. *See* Opp. at 13; 236 Cal. App. 4th at 409. However, *Miles* addressed a wrongful foreclosure action, not a negligence claim. Beatty offers no other argument that an exception to the general rule applies in this case. Accordingly, Defendants' motion to dismiss is granted as to Beatty's alleged emotional distress damages arising from his negligence claim.[11] However, Beatty may plead emotional distress damages for his wrongful disclosure claim, which is discussed in the following section.

In sum, the court holds that Beatty has adequately alleged that Defendants owed him a duty of care under a negligent servicing theory but dismisses Beatty's claim for emotional damages as to this claim.

### C. Wrongful Foreclosure

To state a claim for wrongful disclosure, a plaintiff must allege that "(1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) plaintiffs were prejudiced or harmed; and (3) they tendered the amount of the secured indebtedness or were excused from tendering." *Cervantes v. W. End 3199 REO LLC*, No. 17-cv-06100-VKD, 2018 WL 6727823, at *9 (N.D. Cal. Dec. 21, 2018).

Defendants argue that this cause of action is moot because "any foreclosure sale that might have occurred was immediately rescinded." Mot. at 11. Again, authorities identified by the court indicate that a debtor loses equitable title to a property upon conclusion of a foreclosure sale regardless of whether a deed upon sale has been recorded. *See In re RW Meridian LLC*, 564 B.R. at 30 ("In an involuntary sale such as foreclosure, equitable title is transferred to the purchaser at

---

[11] Because this analysis is essentially the same as the issue of whether emotional distress damages are available for the breach of covenant claim, Beatty's claim for those damages is also dismissed.

the foreclosure auction with acceptance of the highest bid and it is at that time a trustee's sale is 'complete.'"). Beatty adequately alleges that the foreclosure sale took place. Defendants do not argue or present authority that loss of equitable title does not constitute a "sale" for the purposes of a wrongful foreclosure case or that they have cured that loss.

The court denies Defendants' motion to dismiss Beatty's wrongful foreclosure claim.

### D.     UCL

Beatty's final claim seeks relief for Defendant's alleged violations of California's UCL. Under the UCL, unfair competition is defined as "any unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." *See* Cal. Bus. & Prof. Code § 17200. A business practice is "unlawful" under section 17200 if it violates an underlying state or federal statute or common law. *See Cal-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). An act is "unfair" if the act "threatens an incipient violation of a [competition law],or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law." *Id.* at 187. To the extent the claims sound in fraud, they are subject to the heightened pleading standards of Rule 9(b). *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). Additionally, "[a] plaintiff alleging unfair business practices under the unfair competition statutes 'must state with reasonable particularity the facts supporting the statutory elements of the violation.'" *Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F. Supp. 1303, 1316 (N.D. Cal. 1997) (quoting *Khoury v. Maly's of California*, 14 Cal. App. 4th 612, 619 (1993)).

Defendants argue that Beatty's UCL claim fails because he has not adequately pleaded a predicate cause of action. Mot. at 12. This argument fails, as the court has found Beatty has adequately pleaded causes of action for breach of the implied covenant of good faith and fair dealing, negligence, and wrongful foreclosure. Each of these may serve as a predicate cause of action for a UCL claim based on the unlawful and unfair prongs. However, to the extent that Beatty bases his UCL claim on the "fraudulent" prong, that claim fails. "Fraud" is an "intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury."

Cal. Civ. Code § 3294 (c)(3). Beatty has not alleged that Defendants intentionally harmed him. Moreover, claims fraud must meet the heightened pleading standards of Rule 9(b). *Kearns v. Ford Motor Co.*, 567 F.3d at 1125. The complaint is devoid of allegations that suggest fraudulent conduct by the Defendants; therefore, Beatty's UCL claim may proceed only under the unlawful and unfair prongs.

Defendants also argue that Beatty cannot recover relief under the UCL because the only remedies available under the UCL are injunctive relief and restitution, and Beatty is not entitled to either. *Stone v. Advance Am.*, 278 F.R.D. 562, 564 (S.D. Cal. 2011). The court rejects this argument. Beatty adequately alleged that a foreclosure sale occurred, which entails a loss of equitable title. Defendants have not explained whether and how Beatty recovered this loss. If the loss has not been remedied, injunctive relief and/or restitution may be an appropriate remedy. In absence of evidence to the contrary, Beatty may be entitled to relief under the UCL.

Finally, Defendants assert that Beatty lacks standing to bring a UCL claim because he has not alleged that he suffered damages as a result of Defendants' alleged conduct. This argument fails. As discussed above, Beatty adequately pleaded that he suffered damages as a result of Defendants' conduct.

Accordingly, Defendants' motion to dismiss Beatty's UCL claim is denied.

## V.    CONCLUSION

For the reasons stated above, the court grants in part and denies in part Defendants' motion to dismiss. Beatty's breach of express contract claim is dismissed. To the extent that Beatty alleges breach of the covenant of good faith and fair dealing as a result of Defendants' conduct prior to May 2019, that claim is also dismissed. Beatty is not entitled to emotional distress damages for his breach of covenant and negligence claims, and his prayer for recovery as to those damages is dismissed. To the extent that his UCL claim relies on the "fraudulent prong," that claim is dismissed. Given that these pleading deficiencies were addressed by the court in connection with Defendants' first motion to dismiss, and the court admonished Beatty to "plead his best case," these claims are dismissed with prejudice.

The court will conduct a case management conference on February 5, 2020 at 1:30 p.m. The

parties shall file an updated joint case management conference statement by January 29, 2020.

**IT IS SO ORDERED.**

Dated: December 10, 2019



Donna M. Ryu
United States Magistrate Judge