Matthew Mellen (Bar No. 233350)
Brenna Wood Fitzpatrick (Bar No. 325666)
Rachel Norby (Bar No. 326586)
MELLEN LAW FIRM
1050 Marina Village Parkway, Suite 102
Alameda, CA 94501
Telephone:    (510) 263-9638
Fax:             (415) 276-1902
email@mellenlawfirm.com

LOCKE LORD LLP
Regina J. McClendon (SBN 184669)
rmcclendon@lockelord.com
Xiyi Fu (SBN 278274)
jackie.fu@lockelord.com
101 Montgomery Street, Suite 1950
San Francisco, CA 94104
Telephone: (415) 318-8810
Fax:  (415) 676-5816

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FREDERICK JAMES BEATTY, an individual, | Case Number: 4:19-cv-05145-DMR |
| Plaintiff, | **UPDATED JOINT CASE MANAGEMENT STATEMENT & [PROPOSED] ORDER** |
| v. | |
| PHH MORTGAGE CORPORATION, a business entity; WESTERN PROGRESSIVE, LLC, a business entity; DEUTSCHE BANK NATIONAL TRUST COMPANY, a business entity; and DOES 1-10, inclusive, | |
| Defendants. | |

The parties to the above-entitled action jointly submit this JOINT CASE MANAGEMENT STATEMENT & PROPOSED ORDER pursuant to the *Standing*

Page **1** of **13**

*Form updated May 2018*
*82515544v.1*

*Order for All Judges of the Northern District of California* and Civil Local Rule 16-9. 1.

Jurisdiction & Service

This is an action asserting violations of California Law. Plaintiff is a homeowner who brings this action as a result of Defendants' unlawful conduct concerning a residential mortgage loan for the property located at 1601 Culpepper Drive, Petaluma, CA 94954 (hereinafter "Property"). Defendants removed this action asserting diversity jurisdiction as a basis. Plaintiff does not believe there is diversity jurisdiction, particularly as it is unclear who the members of WESTERN PROGRESSIVE, LLC are. Venue is proper in the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1391(b)(2) because the property at issue is located 1601 Culpepper Drive, Petaluma, CA 94954.

Defendants' Statement

There is complete diversity between Plaintiffs and all three defendants. As explained in Defendants' Notice of Removal, Plaintiff is a citizen of California. ECF No. 1, ¶ 6. PHH Mortgage Corporation is a citizen of New Jersey. *Id.*, ¶ 7. Deutsche Bank Trust Company Americas as Trustee for RALI 2006-QA11 (sued as Deutsche Bank National Trust Company) is a citizen of New York. *Id.*, ¶ 8.

Western Progressive Trustee, LLC dba Western Progressive, LLC ("Western Progressive") is a nominal defendant named only because it was the trustee of the deed of trust. *Id.*, ¶¶ 9-10. Plaintiff makes no allegations that tie Western Progressive to the alleged wrongdoing, outside of its recordation of the foreclosure notices as the trustee of record. Western Progressive filed a Declaration of Non-Monetary Status in the state court on August 12, 2019, and Plaintiff did not object to the Declaration. As such, the Court should not consider Western Progressive's citizenship for diversity purposes. *Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 873 (9th Cir. 2000).

*Form updated May 2018*
*82515544v.1*

Notwithstanding its nominal status, Western Progressive is not a California citizen. It is a Delaware limited liability company and its sole member is a citizen of Grand Duchy of Luxembourg. Consequently, Western Progressive is a citizen Luxembourg for purposes of diversity jurisdiction. *Abano v. Ocwen Loan Servicing, LLC*, 2015 WL 5971547, at *2 (C.D. Cal. 2015); *see also* ECF No. 1, ¶ 11.

All parties have been served.

2. Facts

Plaintiff's facts

Plaintiff has owned the property as his primary residence located at 1601 Culpepper Drive, Petaluma, CA 94956 ("the Property") since around 2005. To purchase the Property, Plaintiff executed a promissory note and deed of trust securing the loan by the Property. Deutsche Bank Trust Company Americas as Trustee for RALI 2006-QA11 is the beneficiary of the loan, PHH Mortgage Corporation is the servicer of the loan, and Western Progressive Trustee, LLC dba Western Progressive, LLC is the trustee.

Approximately one year ago, Plaintiff reinstated his loan, Defendants sold Plaintiff's property at a foreclosure sale to a third-party purchaser, but Defendants subsequently rescinded the foreclosure sale and returned the monies paid by the third-party purchaser. This process took several months, however, and caused Plaintiff extreme anxiety and emotional distress, as well as forcing Plaintiff to incur attorneys' fees to protect his rights.

After the sale was rescinded, however, Plaintiff was misinformed about the procedure for making payments while involved in a lawsuit. Plaintiff was ready, willy, and able to make full and timely payments at all times.

*Form updated May 2018*
*82515544v.1*

In June 2019, Plaintiff spoke with someone at PHH and asked to make all of the payments due at that time in order to bring the loan out of foreclosure. However, PHH told Plaintiff that he needed to contact an entity by the name of Aldridge Pite LLP ("AP") in order to make his reinstatement payment. In fact, AP was unrelated to the loan and not able to assist Plaintiff. Plaintiff called AP several times over the course of a week when he finally spoke to someone at AP on or about June 18, 2019 when someone from AP returned his phone calls. Plaintiff gave the AP representative all of the information that they needed to find his loan, but they could not find any file on his loan and confirmed this in an email to Plaintiff. Plaintiff called PHH back and told them that AP could not find his file, and PHH told Plaintiff that they made a mistake and that AP is not assigned to this loan.

On or about June 26, 2019, PHH finally told Plaintiff that WP is the correct entity to contact about reinstating his loan. Plaintiff immediately contacted WP and asked to reinstate his loan, but they refused and said that since the foreclosure sale is less than five (5) days away, they cannot reinstate the loan.
Had PHH given Plaintiff the correct information when he originally expressed his intent to reinstate the loan, then he would have been able to timely reinstate his loan.

Plaintiff immediately called PHH, and PHH represented to Plaintiff that he can only reinstate his loan if he gets a reinstatement quote from WP, but when Plaintiff called WP back, they told Plaintiff that he needs to get the reinstatement information from PHH.

Plaintiff called PHH back and asked if he can pay the reinstatement amount that he found on a statement from May of 2019, and PHH said that he could pay that amount and that would reinstate his loan, but then Plaintiff realized that this payment would not account for the June payment, and PHH realized that this was correct and

*Form updated May 2018*
*82515544v.1*

told him that he must make the June payment also. In other words, PHH did not know what the correct reinstatement amount was.

Plaintiff found a letter from PHH that had a reinstatement quote of $29,498.35 that said it was good until July 1, 2019, and Plaintiff asked if that was accurate and if that would be sufficient to reinstate, and PHH said that that amount was accurate and sufficient to reinstate. PHH then instructed Plaintiff to wire the $29,498.35 to PHH and to give them the wire transfer reference number when he did this to confirm that the money was wired to them. Plaintiff followed all of their instructions and wired the money to PHH on June 26, 2019. PHH confirmed receipt of the funds and represented to Plaintiff that the Property was out of foreclosure.

However, PHH did not actually take the property out of foreclosure, and in fact sold the property at foreclosure the next day, June 27, 2019. The next day, on or about June 28, 2019, Plaintiff received approximately a dozen harassing phone calls telling him that the Property was sold. Plaintiff told every single caller whose call he answered that this was a mistake and that the Property could not have been sold because he reinstated his loan.

Plaintiff was on his way to Brazil for a vacation and left that night, and the entire time he was away, he was dealing with this foreclosure debacle. Plaintiff called PHH, but PHH said that they did not have information for him and that he must contact WP, but when he contacted WP, WP told him that he needs to contact PHH. At one point, WP told Plaintiff that all three of them should get on the phone to sort the issue out, but once PHH picked up the phone, WP hung up.

At one point, PHH told Plaintiff that he still had the house and that no Trustee's Deed Upon Sale has been recorded and that Plaintiff still needed to make the July payment. However, PHH told Plaintiff that he could not make the payment at that time and that

Page **5** of **13**

he had to wait until July 5, 2019 to make the payment. At that time, prior to July 5, 2019, PHH would not accept Plaintiff's payment.

Plaintiff called PHH on July 5, 2019 to make the payment as instructed, but PHH told him that it still could not accept his payment and that he must call back on July 8, 2019. During the entire week from of July 8, 2019 through July 12, 2019, Plaintiff called PHH every day and at some point, multiple times per day to make the payment, but PHH refused to accept his payment. Plaintiff even went online to make the payment, but the website would not allow him to make the payment. The website indicated that he was current on his loan.

On Wednesday, July 10, 2019, PHH told Plaintiff that he has to make the July 2019 payment through WP. Plaintiff called WP every day, over a dozen times, from Wednesday, July 10, 2019 through Friday, July 12, 2019, and every time he called WP, he was put on hold for upwards of ten (10) minutes at a time only to be forwarded to a voicemail inbox that was *full* and at which he could not even leave a message.

Plaintiff was unable to rent his rental unit during this period of time because Defendants left him in a state of uncertainty about whether or not he would lose his home. Plaintiff is a small business owner and the damage to his credit from Defendant's wrongful conduct essentially precludes Plaintiff from receiving loans to invest in his business, thereby seriously detrimentally effecting Plaintiff's ability to earn a living. Plaintiff suffered the loss of his property, extreme stress and anxiety, stress to his marriage and personal life, and lost an immense amount of time and resources as a result of Defendants' conduct as herein described. Plaintiff has also suffered credit damage, loss of income, and loss of rental income.

Defendants' Facts

On or about November 7, 2006, Plaintiff obtained a $561,600 loan (the "Loan") from Homecomings Financial, LLC (f/k/a Homecomings Financial Network, Inc.).

*Form updated May 2018*
*82515544v.1*

The Loan is secured by a Deed of Trust recorded against the Property.  On August 10, 2012, an Assignment of Deed of Trust was recorded, memorializing the transfer of the beneficial interest to Deutsche Bank.

Between 2009 and 2018, Plaintiff defaulted on the Loan four times, and each time the Loan was subsequently brought current.  Specifically, on June 21, 2017, the Property was sold to a third party purchaser at a foreclosure sale following Plaintiff's default on the Loan.  However, after learning that Plaintiff reinstated the Loan on the day of the sale, the foreclosure sale was immediately rescinded and Plaintiff was allowed to resume making payments on the Loan.

Plaintiff defaulted again and another Notice of Default was recorded on January 30, 2019.  On May 14, 2019, a Notice of Trustee's Sale was recorded, setting a foreclosure sale on June 27, 2019.  The foreclosure sale went forwarded, but after learning that Plaintiff brought the Loan current, PHH immediately rescinded the sale.  It also caused a Notice of Rescission of Notice of Default to be recorded on July 26, 2019.

3. <u>Legal Issues</u>

   1) Whether Defendants breached the Deed of Trust.
   2) Whether Defendants breached the covenant of good faith and fair dealing implied in the Deed of Trust.
   3) Whether Defendants owe Plaintiff a duty of due care and if so, whether Defendants breached that duty.
   4) Whether Defendants wrongfully foreclosed on Plaintiff.
   5) Whether Defendants engaged in Unfair Competition.
   6) Whether Plaintiff performed under the Deed of Trust, or if his performance was otherwise excused.

*Form updated May 2018*
*82515544v.1*

7) Whether Plaintiff sustained any damages resulting from Defendants' alleged breach.

8) Whether Plaintiff is precluded from bringing a negligence claim on the same allegations that give rise to his contract claims.

9) Whether Plaintiff's negligence claim is barred by the economic loss doctrine.

10) Assuming Defendants owed Plaintiffs a duty of care, whether Defendants breached that duty.

11) Assuming Defendants owed Plaintiffs a duty of care, whether Plaintiff sustained damages resulting from Defendants' alleged breach.

12) Whether Plaintiff is entitled to any remedy under his unfair competition claim.

4. <u>Motions</u>

On December 10, 2019, Defendants' Motion to Dismiss the First Amended Complaint was granted in part and denied in part. Defendants filed an Answer to the remaining claims on December 19, 2019. Defendants plan to move for summary judgment.

5. <u>Amendment of Pleadings</u>

Plaintiff does not currently anticipate further amendment to the Pleadings unless ordered to do by the Court or granted leave to amend following the granting of Defendants' currently pending motion to dismiss.

Parties propose March 2, 2020 as the cut-off date for motions to amend pleadings.

*Form updated May 2018*
*82515544v.1*

6. <u>Evidence Preservation</u>

Plaintiff's Statement

Plaintiff certifies that they have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"), and will take reasonable proportionate steps to preserve evidence relevant to the issues reasonably evident in this action.

Defendants' Statement

Defendants certify that they have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"), and will take reasonable proportionate steps to preserve evidence relevant to the issues reasonably evident in this action.

7. <u>Disclosures</u>

The parties have exchanged initial disclosures as of January 9, 2020.

*Form updated May 2018*
*82515544v.1*

8. <u>Discovery</u>

The parties have met and conferred pursuant to Federal Rule of Civil Procedure 26(f) and propose the following Discovery Plan:

   a. Date for Exchange of Initial Disclosures:  January 9, 2020
   b. Cut-off for Non-Expert Discovery:  September 14, 2020.
   c. Disclosure of Expert Witnesses: November 13, 2020 (and Disclosure of Rebuttal Experts: November 27, 2020).
   d. Cut-Off for Expert Discovery: February 1, 2021.
   e. Proposed Changes to Discovery Rules:  The Parties do not anticipate the need for any changes to the limits on discovery imposed by the Federal Rules of Civil Procedure.
   f. Issues Relating to Timing or Scheduling of Discovery: Other than the dates proposed above, the Parties have no proposals or issues to raise relating to the timing, sequencing, phasing or scheduling of discovery.
   g. Need for Discovery Outside the United States:  The Parties do not anticipate the need to take discovery outside the United States.
   h. Video or Sound Recording of Depositions:  The Parties anticipate that some depositions may be recorded by audiovisual means.
   i. Need for Mid-Discovery Status Report and Conference:  The Parties do not currently foresee the need for a Mid-Discovery Status Report and Conference.

9. <u>Class Actions</u>

This case is not a class action.

10. <u>Related Cases</u>

None.

Page **10** of **13**

11. Relief

Plaintiff seeks:
1. That judgment is entered in Plaintiffs' favor and against Defendants, and each of them;
2. For an order requiring Defendants to show cause, if they have any, why they should not be enjoined as set forth above, during the pendency of the action;
3. For a temporary restraining order and preliminary injunction preventing Defendants, or anyone acting in concert with them, from causing the Property to be sold, assigned, transferred to a third-party, or taken by anyone or any entity prior to remedying the violations of Plaintiff's rights complained of herein;
4. For damages, disgorgement, and injunctive relief;
5. For compensatory and statutory damages, attorneys' fees, and costs according to proof at trial;
6. For such other and further relief as the Court may deem just and proper.

Defendants' Statement

Defendants deny that Plaintiff is entitled to any of the relief that he seeks.

12. Settlement and ADR

Parties currently appear far apart on settlement. Plaintiff believes mediation would be helpful in bringing the parties closer. Defendants prefer to discuss ADR selection with the Court at the case management conference.

13. Consent to Magistrate Judge For All Purposes

All parties consent to have a magistrate judge conduct all further proceedings.

14. Other References

None.

15. Narrowing of Issues

The parties anticipate that discovery may result in the narrowing of the issues.

16. Expedited Trial Procedure

*Form updated May 2018*
*82515544v.1*

The Parties do not at this time anticipate that this case is suitable for handling under the *Expedited Trial Procedure of General Order 64*.

17. Scheduling

    a. Date for Exchange of Initial Disclosures:  January 9, 2020.
    j. Cut-off for Non-Expert Discovery:  September 14, 2020.
    k. Disclosure of Expert Witnesses: November 13, 2020 (and Disclosure of Rebuttal Experts: November 27, 2020).
    b. Cut-Off for Expert Discovery: February 1, 2021.
    c. Deadline for dispositive motions: March 3, 2021 or 30 days after close of all discovery, whichever is later.
    d. Pre-trial conference and Trial: Defendants propose that the Court defer scheduling trial in this matter until the motion for summary judgment is heard.

18. Trial

Plaintiff demands a jury trial and expects the trial to last 4 days.  Defendants expect the length of the trial to be 3-5 days.

19. Disclosure of Non-party Interested Entities or Persons

The parties have filed their Certificates of Interested Parties.

Defendants filed a "Certification of Interested Entities or Persons" required by Civil Local Rule 3-15 (ECF No. 2).  Defendant PHH Mortgage Corporation is a wholly owned subsidiary of PHH Corporation, which is a wholly owned subsidiary of Ocwen Financial Corporation, a publicly held company.  No publicly held corporation owns more 10% of Ocwen Financial Corporation's stock.  Defendant Deutsche Bank Trust Company Americas (f/k/a Bankers Trust Company) is a wholly owned subsidiary of Deutsche Bank Trust Corporation.  Deutsche Bank Trust Corporation is a wholly owned subsidiary of DB USA Corporation, which is a wholly owned subsidiary of Deutsche Bank AG.  No publicly held company owns 10% or more of Deutsche Bank AG's stock.

*Form updated May 2018*
*82515544v.1*

20. <u>Professional Conduct</u>

All attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

21. <u>Other</u>

The parties are not presently aware of any other matters at this time further conducive to the just, speedy, and inexpensive resolution of this matter.

Dated: February 26, 2020         */Brenna Wood Fitzpatrick/*
                                 Brenna Wood Fitzpatrick
                                 Counsel for plaintiff


Dated: February 26, 2020         */Meagan S. Tom/*
                                 Meagan S. Tom
                                 Counsel for defendants

<u>CASE MANAGEMENT ORDER</u>

The above JOINT CASE MANAGEMENT STATEMENT & PROPOSED ORDER is approved as the Case Management Order for this case and all parties shall comply with its provisions. [In addition, the Court makes the further orders stated below:]

IT IS SO ORDERED.

Dated:
                                 _____
                                 UNITED STATES DISTRICT/MAGISTRATE JUDGE

*Form updated May 2018*
*82515544v.1*