UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

FREDERICK JAMES BEATTY,

          Plaintiff,

    v.

PHH MORTGAGE CORPORATION, et al.,

          Defendants.

Case No.  19-cv-05145-DMR

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 97

      This case arises from a mortgage and foreclosure dispute.  Defendants PHH Mortgage Corporation ("PHH"), Western Progressive, LLC ("WP"), and Deutsche Bank Trust Company Americas as Trustee for RALI 2006-QA11 (sued as Deutsche Bank National Trust Company) ("Deutsche Bank") move for summary judgment on all of Plaintiff Frederick James Beatty's remaining claims.  Mot. for Summ. J. ("Mot.") [Docket No. 97]; Reply [Docket No. 100.]  Beatty opposed.  Opp'n [Docket No. 98].  This matter is suitable for determination without oral argument.  Civil L.R. 7-1(b).  Having considered the parties' submissions, the court grants Defendants' motion for summary judgment.

I.     **BACKGROUND**

     A.     **Factual Background**

      The following facts are undisputed.[1]  Beatty purchased a property located at 1601 Culpepper Drive, Petaluma, CA 94956 (the "Property") in 2005.  Declaration of Gina Feezer on behalf of PHH Mortgage Corp. ("PHH Decl.") ¶¶ 3-6 [Docket No. 97-3].  In 2006, Beatty refinanced the loan encumbering the property and executed a promissory note and deed of trust.

_____

[1] Plaintiff did not submit any evidence to oppose this motion.  Instead, Plaintiff's counsel filed a declaration in which he provides his personal views about the merits of the case.  Declaration of Ramonchito De Castro [Docket No. 98-1].

United States District Court
Northern District of California

*Id.* ¶ 6.  The loan was later assigned to Defendant Deutsche Bank Trust Company Americas.  *Id.*

¶ 11.  Defendant PHH, as an indirect subsidiary of non-party Ocwen Loan Servicing, began

servicing the loan on April 1, 2019.  *Id.* ¶¶ 5, 34.

Between 2010 and 2018, Beatty defaulted on his mortgage five times.  *See* PHH Decl.

¶¶ 8-10 (2010 default); *id.* ¶¶ 14-15 (2014 default); *id.* ¶¶ 18-19 (2017 default); *id.* ¶¶ 25-31 (2018

default).  On June 21, 2017, Beatty's home was foreclosed on and sold to a third party.  *Id.* ¶ 22

("2017 foreclosure").  Beatty reinstated his loan a day before the sale but before the foreclosure

could be canceled.  *Id*. ¶¶ 20-22.  Accordingly, Beatty's mortgage servicer Ocwen rescinded the

foreclosure sale and reinstated the loan, including negotiating with the third-party purchaser.  *Id.*

¶ 25.  Beatty defaulted on the loan again, and a new foreclosure sale was scheduled for August 8,

2018.  *Id.* ¶¶ 28-29 ("2018 foreclosure").  Again, a day before the foreclosure sale was to occur,

Beatty reinstated his loan, and Ocwen cancelled the foreclosure sale.  *Id.* ¶¶ 30-32.

One month later, Beatty again defaulted on his loan after not paying his September 1, 2018

mortgage payment.  PHH Decl. ¶ 32.  The ensuing events are the subject of the present lawsuit.

On January 30, 2019, a Notice of Default and Election to Sell was recorded in the Sonoma County

Recorder's Office and reported that the loan was past due as of September 1, 2018.  *Id.* ¶ 33.  At

the time the Notice was recorded, Beatty needed to pay $15,244.56 to bring the account current.

*Id.*  On May 14, 2019, a Notice of Trustee's Sale was recorded, and a foreclosure sale date was set

for June 27, 2019.  *Id.* ¶ 35.  The last statement issued to Beatty before the foreclosure sale quoted

the amount needed to reinstate the loan at $29,498.35.  PHH Decl. Ex. D ("6/17/2019 statement").

According to undisputed evidence provided by PHH, Beatty then conducted a series of

phone calls and email communications with Defendants PHH and WP, and non-party Aldridge

Pite ("AP") in the days leading up to and following the June 27, 2019 foreclosure sale.  PHH Decl.

Ex. E ("Call Logs").[2]  Between June 17 and July 8, 2019, the following sequence of events

---

[2] The parties do not dispute that these calls occurred but disagree on the dates of certain calls.
The phone logs attached to PHH's declaration themselves are not expressly dated but they include
filepath names that do contain what appear to be dates.  The PHH declaration laying the
foundation for the logs dates each call.  The logs show that the first phone call took place on June
17, 2019—ten days prior to the foreclosure sale.  PHH Decl. ¶ 37; Call Logs at 1-2.  Beatty says,

transpired:

- On June 17 Beatty called PHH to reinstate his loan.  The operator told Beatty he "ha[d] to go through the foreclosure attorney" and gave a phone number for AP.  PHH Decl. ¶ 37; Call Logs at 1-2 ("June 17 call").

- Also on June 17 at 6:22 p.m., Beatty sent an email to AP inquiring about how to "bring [his] account . . . up to date."   Declaration of Nadia D. Adams ("Adams Decl.") Ex. M ("AP email") [Docket No. 97-6].

- On June 18 at 11:29 a.m., a customer service representative from AP replied via email and reported that "we do not have a foreclosure file" for Beatty's account.  The representative directed Beatty to contact his loan servicer.  *See* AP email.

- On June 19, Beatty called PHH back and spoke with a different operator.   That operator clarified the correct foreclosure trustee: "It's actually Western Progressive the foreclosure attorney, sorry.  That's not Aldridge Pipe, it's Western Progressive."  The operator gave Beatty the phone number for WP shortly before the call abruptly ended.  PHH Decl. ¶ 38; Call Logs at 4.

- On June 24, Beatty called PHH again.  He said that he "tried to pay th[e account] off a couple weeks ago . . . but someone at your company gave me all the wrong information."  The operator provided Beatty with the information for WP, and Beatty confirmed he "just needed the place to call."  PHH Decl. ¶ 39; Call Logs at 4-5.

- On June 25, Beatty called PHH again.  He again said he had been "calling for two weeks but every time I call you guys told me to call Adrege Pratt [*sic*]."  He said he called the "correct"

---

without evidence, that the call occurred "on or about June 18," after having "called AP several times over the course of a week."  Opp'n at 3, 8.  Beatty also asserts that later on, he "called WP every day, over a dozen times" to make his July 2019 loan payment.  Opp'n at 5.  Beatty provides no evidence establishing that he made these calls to AP and WP, when those calls occurred, or that Defendants' call logs are inaccurate or incomplete.  Instead, he relies only upon cites to allegations in his First Amended Complaint ("FAC"), which are insufficient to create a dispute of material fact.  *See* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute").

United States District Court
Northern District of California

place (presumably WP) "yesterday" and "they asked if you [PHH] would send them a print screen." PHH Decl. ¶ 40; Call Logs at 6. The operator conferenced in a foreclosure attorney, who reported that they need "the print screen or the amount what is needed to reinstate[]" the loan. The operator reported that he made a "request to expedite" of a different team to produce the "print screen," and that once they did they would forward that screen to WP. PHH Decl. ¶ 40; Call Logs at 6-10.

- The next day, June 26—the day before the foreclosure sale—Beatty called PHH back and requested a print screen, to which the operator replied "we cannot sen[d] a print screen." PHH Decl. ¶ 41(a); Call Logs at 10-13. The operator instead provided Beatty with information to complete a wire transfer to reinstate his loan. *Id.* The operator said that Beatty had to get the total reinstatement amount from the foreclosure attorney. *Id.*

- On June 26 Beatty made a wire transfer to PHH Mortgage Servicing totaling $29,498.35. Adams Decl. Ex. R ("6/26/2019 Wire Transfer").

- Beatty made a second call on June 26, in which he provided a reference number for the wire transfer he made. PHH Decl. ¶ 41(b); Call Logs at 13-14.

- On June 27 the foreclosure sale went ahead as scheduled as the payment had not been received and applied to Beatty's account. PHH Decl. ¶ 42. The property was sold to a third-party purchaser. *Id.*

- On June 28 Beatty called PHH (apparently from El Salvador, where he was en route to a vacation) and said that he "wired all the money" but now "my house was being sold." PHH Decl. ¶ 43; Call Logs at 14-16. He asserted that he had been calling "Aldridge Pite for two weeks" and that PHH "kept giving the wrong information" for WP. *Id.* Beatty again provided the wire transfer information and was told to check on the foreclosure's status within two business days. *Id.*

- On July 2 Beatty called PHH to check the status of his reinstatement. The operator told Beatty that he was "up to date" on his account but he had to make another payment for July. PHH Decl. ¶ 44; Call Logs at 16-18. Beatty said he was on vacation in Rio de Janeiro but acknowledged that "the payment that I made was good until July 1." *Id.* He offered to make

4

his July payment on the phone but the operator said that the account needed to be updated, and that he could wait until he returned from vacation.  *Id.*

- On July 8 Beatty called PHH to complete his July 2019 mortgage payment.  The operator explained that he could take the payment but that because the property was sold at the foreclosure, Beatty had to call an attorney.  PHH Decl. ¶ 46; Call Logs at 19-20.

Between July 10 and July 17, 2019, Defendants worked to confirm the necessary payments and unwind the foreclosure sale, including refunding the sale proceeds to the third-party purchaser.  PHH Decl. ¶ 47.  On July 26, 2019, a Notice of Rescission of Notice of Default was recorded, which unwound the 2019 foreclosure.  *Id*. ¶ 50.  Meanwhile, Beatty made his July payment on July 19, 2019 which brought his account current, and he has since continued to make his monthly loan payments.  *Id*. ¶¶ 48-49.[3]

**B.      Procedural History**

Beatty filed a complaint in Sonoma County Superior Court on July 17, 2019 alleging five claims against Defendants for breach of contract; breach of the covenant of good faith and fair dealing; negligence; wrongful foreclosure; and violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL").  [Docket No. 1-1.]  Defendants timely removed based on diversity jurisdiction.  [Docket No. 1.]  On August 23, 2019, Defendants filed a motion to dismiss Beatty's initial complaint.  [Docket No. 8.]  On October 10, 2019, the court held a hearing and granted the motion to dismiss on the record.  [Docket No. 15.]  Beatty filed his First Amended Complaint ("FAC") on October 24, 2019.  [Docket No. 16.]  He alleged that Defendants' conduct caused damage to his credit score, a loss in income because he was unable to rent his rental unit amid a "state of uncertainty" during the underlying events, and loss of property. FAC ¶¶ 38-40.  He further alleged extreme stress and anxiety, stress to his marriage and personal life, and loss of an "immense amount of time and resources."  *Id.* ¶ 40.

On November 1, 2019, Defendants moved to dismiss the FAC.  [Docket No. 18.]  The

---

[3] In his opposition brief, Beatty recounts some difficulties he had in making his July 2019 loan payment after he reinstated his loan.  *See* Opp'n at 4-5.  However, he does not provide any evidentiary support for his assertions.

1    court granted it in part on December 10, 2019.  Order on Defendants' Motion to Dismiss ("MTD

2    Order") [Docket No. 28.]  The court dismissed with prejudice Beatty's breach of contract claim,

3    his claim for breach of the implied covenant with respect to Defendants' conduct prior to May

4    2019, his prayer for recovery of emotional distress damages for his breach of covenant and

5    negligence claims, and his fraud-based UCL claim.  MTD Order at 22.  The court denied

6    Defendants' motion on all other claims.  Defendants filed this motion for summary judgment on

7    July 8, 2021.

8    **II.     LEGAL STANDARD**

9           A court shall grant summary judgment "if . . . there is no genuine dispute as to any material

10   fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The burden

11   of establishing the absence of a genuine issue of material fact lies with the moving party.

12   *Devereaux v. Abbey*, 263 F.3d 1070, 1079 (9th Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477

13   U.S. 317, 323 (1986)).  The court must view the evidence in the light most favorable to the non-

14   moving party.  *Fresno Motors, LCC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir.

15   2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  A genuine factual issue

16   exists if sufficient evidence favors the non-movant such that "a reasonable [judge or] jury could

17   return a verdict for the nonmoving party.  *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200

18   F.3d 1223, 1229 (9th Cir. 2000) (alteration in original) (quoting *Anderson*, 477 U.S. at 248).  The

19   court may not weigh the evidence, assess the credibility of witnesses, or resolve issues of fact.

20   *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting *Anderson*,

21   477 U.S. at 255).

22          To defeat summary judgment once the moving party has met its burden, the nonmoving

23   party may not simply rely on the pleadings, but must point to specific facts, by affidavit or as

24   otherwise provided by Federal Rule of Civil Procedure 56, showing that a genuine issue of

25   material fact exists.  *Devereaux*, 263 F.3d at 1076.  More than a "scintilla of evidence" must exist

26   to support the non-moving party's claims.  *Pomona*, 750 F.3d at 1049 (quoting *Anderson*, 477

27   U.S. at 252).  A showing that "there is some 'metaphysical doubt' as to the material facts as issue"

28   will not suffice.  *In re Oracle Corp. Secs. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (quoting

United States District Court
Northern District of California

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."  *Pomona*, 750 F.3d at 1049-50 (quoting *Matsushita*, 475 U.S. at 587).

## III.    DISCUSSION

### A.    Breach of the Implied Covenant of Good Faith and Fair Dealing[4]

Defendants are entitled to summary judgment on Beatty's breach of implied covenant claim.  "Under California law, '[e]very contract imposes on each party a duty of good faith and fair dealing in each performance and its enforcement.'"  *Herskowitz v. Apple, Inc.*, 301 F.R.D. 460, 473 (N.D. Cal. 2014) (quoting *Carson v. Mercury Ins. Co.*, 210 Cal. App. 4th 409, 429 (2012)).  To succeed on a claim for breach of the implied covenant of good faith and fair dealing, the plaintiff must establish: "(1) the parties entered into a contract; (2) the plaintiff fulfilled his

---

[4] Defendants filed a request for judicial notice ("RJN") of twenty-three exhibits in support of their motion for summary judgment.  [Docket No. 97-1.]  All exhibits except for Exhibit 15 and 23 are deeds, notices of default and rescissions of default, notices of state and federal tax liens, and notices of trustee's sale recorded in the Sonoma County Recorder's Office from 2006 until 2019.  Exhibit 15 is a trustee's deed upon sale recorded in the DeKalb County, Georgia, Recorder's Office.  Exhibit 23 is the docket in a separate state court action, *Beatty v. Ocwen Loan Servicing*, No. SCV257301 (Cal. Super. Ct. 2015).  Beatty objects to Exhibits 4, 5, 8, 12, 13, 14, and 23 as irrelevant and/or unfairly prejudicial.  [Docket No. 98-3.]

"Just because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth."  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).  Many of Defendants' exhibits relate to defaults Beatty incurred in 2010, 2014, 2016, and 2017.  "Notably, the [Defendants] have not asked the Court to take judicial notice of *particular facts or statements* within these documents or the fact that these documents contain certain information."  *Threshold Enters. Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139, 146 (N.D. Cal. 2020) (emphasis in original).  Defendants do not point to any facts or statements in these exhibits related to the conduct and injuries alleged in the FAC, which solely concern the 2019 foreclosure.  The court finds that only those exhibits pertaining to the 2019 foreclosure and the process to reinstatement Beatty's loan are relevant and judicially noticeable.  Accordingly, the court grants judicial notice of Exhibit 3 (Deed of Trust, recorded Nov. 20, 2006, containing provisions on the reinstatement process); Exhibit 20 (Notice of Default, recorded January 30, 2019); Exhibit 21 (Notice of Trustee's Sale, recorded May 14, 2019), and Exhibit 22 (Notice of Rescission of Notice of Default, recorded July 26, 2019).  The court denies the request for judicial notice of all other exhibits as irrelevant.  Beatty's objections to particular exhibits are further denied as moot.

1    obligations under the contract; (3) any conditions precedent to the defendant's performance

2    occurred; (4) the defendant unfairly interfered with the plaintiff's rights to receive the benefits of

3    the contract; and (5) the plaintiff was harmed by the defendant's conduct." *Rosenfeld v.*

4    *JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 968 (N.D. Cal. 2010). The implied covenant

5    "exists merely to prevent one contracting party from unfairly frustrating the other party's right to

6    receive the benefits of the agreement actually made." *Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317,

7    349 (2000). Here, the parties do not dispute that a contract existed or that any conditions

8    precedent to Defendants' performance occurred. Elements 2, 4, and 5 are in dispute.

9                    **1.      Beatty's Obligation to Timely Reinstate the Loan**

10   To establish the second element in a breach of covenant claim, Beatty must show that he

11   fulfilled his obligations under the deed of trust to timely reinstate the loan and avoid foreclosure.

12   Defendants argue that Beatty did not fulfill that obligation because his failure to make his

13   contractual loan payments from September 1, 2018 to June 1, 2019 placed him at risk of

14   foreclosure. Moreover, under the terms of the 2006 deed of trust, Beatty could have avoided the

15   foreclosure by reinstating his loan up to five days prior to the sale date "if [he met] certain

16   conditions." RJN Ex. 3 ¶ 19. Those conditions included satisfaction of all past due payments,

17   cure of any default of other covenants and agreements, and payment of expenses related to

18   enforcement of the deed of trust. *Id.* California law similarly provides for reinstatement up to five

19   business days before the foreclosure sale. Cal. Civ. Code § 2924c(e).

20   Beatty does not dispute that he had a conditional right of reinstatement. *See* Opp'n at 9,

21   14. Instead, he asserts without evidentiary support that whether he "breached the contract by not

22   making timely reinstatement payment" is "factually disputed." *Id.* at 9. However, elsewhere in

23   his brief he admits that his reinstatement was "untimely." *Id.* at 14. The undisputed record shows

24   that Beatty did not timely reinstate his loan, and that he therefore breached the pertinent terms of

25   the deed of trust.

26   On January 30, 2019 the Sonoma County Recorder's Office recorded a Notice of Default

27   indicating that Beatty would have to contact WP to find out the amount he had to pay or arrange

28   for payment to avoid foreclose. RJN Ex. 20 ("2019 NOD"). On May 14, 2019, the recorder's

United States District Court
Northern District of California

office recorded a Notice of Trustee's Sale and set a foreclosure sale of the Property for June 27, 2019.  RJN Ex. 21 ("2019 NOTS").  Beatty clearly had notice of his default and impending foreclosure because he produced a copy of the May 2019 NOTS in discovery.  *See* Adams Decl. Ex. S.  Under the deed of trust and California law, Beatty could reinstate his loan up to five business days before the scheduled sale.  Mot. at 16.  Beatty wired the full sum due to PHH on June 26, 2019, after the five day period had expired and only one day before the sale.  *See* 6/26/2019 Wire Transfer.  PHH did not receive the wire in time to apply the funds to Beatty's account and therefore could not stop the foreclosure sale from taking place.  Mot. at 10; PHH Decl. ¶ 42.[5]

The undisputed facts therefore show that Beatty was in default, which triggered the terms of the reinstatement provision in the deed of trust.[6]  He did not initiate the wire transfer to reinstate his loan until after the five-day deadline had passed.  Accordingly, Beatty failed to meet the required conditions to timely reinstate his loan and avoid foreclosure.

Beatty's inability to identify a material disputed fact with respect to the second element of his implied covenant claim is sufficient to grant summary judgment in Defendants' favor.  In the interest of completeness, the court nevertheless goes on to analyze the fourth element of Beatty's claim, which is the crux of the parties' dispute.

### 2. Unfair Interference with Reinstatement

The fourth element requires Beatty to establish that Defendants unfairly interfered with Beatty's right to receive the benefits of reinstatement by failing to provide him with accurate information.  To prove his claim, Beatty must show that Defendants' conduct demonstrates a "failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake,

---

[5] Defendants explain that it is "generally impractical for a loan servicer" to cancel or postpone a foreclosure sale if it receives reinstatement funds twenty-four to forty-eight hours before a foreclosure sale due to requisite logistics and communications with other parties involved in the sale, such as the foreclosure trustee.  PHH Decl. ¶ 23.

[6] Beatty appears to concede that he was in breach.  Instead, he argues in opposition that his "untimely wiring of the reinstatement funds" was the result of Defendants' failure to provide him with accurate information that would enable him to "exercise his right of instatement."  Opp'n at 9, 14.  That argument is addressed in the analysis of the fourth element of Beatty's claim.

United States District Court
Northern District of California

United States District Court
Northern District of California

bad judgment or negligence but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement." *Claridge v. RockYou, Inc.*, 785 F. Supp. 2d 855, 865 (N.D. Cal. 2011) (quoting *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990)). "Just what conduct will meet this criteria must be determined on a case by case basis and will depend on the contractual purposes and reasonably justified expectations of the parties." *Careau*, 222 Cal. App. 3d at 1395.[7]

Beatty appears to make two arguments—that Defendant PHH provided him "inaccurate information" that AP was the foreclosure trustee rather than WP, and that Defendants failed to provide his reinstatement quote. Opp'n at 7, 10-11. Beatty contends Defendants' conduct unlawfully interfered with his ability to timely reinstate his loan, was the "main cause of [his] untimely performance," and was "intentional." *Id.* Defendants argue that they committed "one honest mistake" amid multiple notices of correct information that Beatty received, and that they did not "consciously or deliberately" interfere with his reinstatement. Mot. at 16-17. Construing the record in Beatty's favor as the non-moving party, the court concludes that no reasonable juror could find that Defendants' conduct amounted to conscious or deliberate interference with Beatty's right to timely reinstate his loan.

Beatty does not question and thereby concedes that the 2019 NOD and 2019 NOTS each accurately identified WP as the foreclosure trustee. The 2019 NOD stated that Beatty should contact WP "to arrange for payment to stop the foreclosure"; the 2019 NOTS included contact information for WP as well as the time and location of the foreclosure sale. Beatty does not dispute that he received the 2019 NOTS. *See* Adams Decl. Ex. S.

Beatty says that he first learned of the foreclosure in June. Adams Decl. Ex. F ("Beatty

---

[7] The court considers the *Careau* standard in the context of the "unfair interference" element of the breach of covenant claim. *See, e.g.*, *Sprint Spectrum Realty Co. v. Hartkopf*, No. 19-cv-3099-JSC, 2021 WL 1839705, at *7 (N.D. Cal. May 7, 2021) (granting summary judgment where the evidence did not support that the defendant "consciously and deliberately frustrated the agreed upon purposes of the Site Agreement . . . or that he unfairly interfered with Sprint's rights to receive the Agreement's benefits" (quotations omitted)).

Dep. I") at 112; Opp'n at 3.  At that point, he made the first call to PHH.  Opp'n at 3; *see* Call

Logs at 1-2 (June 17 call).  Defendants admit that PHH made an "honest mistake" during that first

call when the operator told Beatty call to contact AP to arrange for reinstatement.  Mot. at 16.

PHH thereafter corrected the information in emails and on multiple subsequent calls.  In fact,

Beatty received an email the very next day instructing Beatty that AP was not his foreclosure

trustee; the next day, PHH told him to work with WP instead of AP.  *See* Call Logs 3-4; AP email.

At Beatty's first deposition, he acknowledged that he had received the June 18 email from AP

stating they did not have his foreclosure file and that he should contact WP again.  Beatty Dep. I at

144-45.  Defense counsel asked, "[s]o by the next day, you were informed by Aldridge Pite that

they were not the correct person, and you needed to contact PHH again," to which Beatty replied,

"[t]hat is correct.  Yes." *Id.* at 145.  Defense counsel also replayed the audio recording of the June

19 call.  *Id.* at 146.  Beatty again admitted that by the time that call occurred, he knew that correct

foreclosure trustee to contact was WP:

> [Defendants' Counsel] Q: Right.  And then Aldridge Pite told you the next day that they
> were not the proper ones, right?
>
> [Beatty] A: Yes.
>
> Q: Okay.  And so then by the 19th you knew that the correct party to deal with was
> Western Progressive.  That's what we just heard in that call, right?
>
> A: (Indiscernible.)
>
> Q: I'm sorry.  I didn't hear your answer.
>
> A: Okay. That's who he said.  Yes.

Beatty Dep. I at 148.

The record evidence belies Beatty's unsupported assertion that he called AP "several times

over the course of a week" until speaking to someone on June 18, 2019.  Opp'n at 3, 8.[8]  Beatty

does not dispute the accuracy of the call logs nor does he provide any evidence that he made

[8] Beatty again supports this argument with citations to the FAC, which is not sufficient to oppose
summary judgment.

separate calls that are not captured in the logs.  The call transcripts and deposition testimony establish that PHH misdirected Beatty to contact AP only once on June 17.  By June 19, Beatty had the correct information to contact WP instead.  Call Logs at 4; Beatty Dep. I at 145, 148.  On June 19, he was still within his timeframe to timely reinstate the loan, but the call logs demonstrate that he waited five days until June 24 to call back seeking the same information.  Call Logs at 4-5.  On this record, no reasonable juror could conclude that Defendants consciously and deliberately frustrated Beatty's efforts to timely reinstate the mortgage.

Beatty further argues that Defendants failed to provide him with his "reinstatement quote so he could make timely payments."  Opp'n at 10.  Elsewhere he states that "PHH did not know what the correct reinstatement" was, but ultimately he "found a letter" indicating the proper amount.  Opp'n at 4.  The parties do not dispute that Beatty received a written notice detailing his past amount due in his June 2019 statement.  *See* 6/17/2019 statement; Opp'n at 4.  On the June 19 call, the same call in which the operator told Beatty he had to contact WP, the operator told Beatty to "refer [to] the monthly statement."  Call Logs at 4.  On June 24, the operator told Beatty to [c]all [WP] and check the correct amount."  *Id.* at 5.  On the June 26 call, Beatty admitted to finding a letter that stated how much to pay.  *Id.* at 11.  He wired that amount the same day.  6/26/2019 Wire Transfer.  Again, on this record, no reasonable juror could conclude that PHH consciously and deliberately misled Beatty about the amount he had to pay in order to reinstate his loan.[9]

_____

[9] Defendants assert that Beatty's allegation that "PHH would not accept his July 2019 Loan payment is simply false."  Mot. at 17; *see* FAC ¶ 55.  Beatty does not address this argument in his section on unlawful interference other than in a passing citation, but he asserts without evidentiary support that "PHH refused his payment" despite multiple attempts online and via phone.  Opp'n at 4-5.  To begin with, it is not clear how Defendants' acceptance of Beatty's July 2019 loan payment is relevant to his breach of implied covenant claim, which deals with his right to reinstate his loan and his untimely reinstatement on June 26.  Even assuming it is relevant, Beatty does not point to any evidence that Defendants did not accept his loan, or that he made additional calls to PHH and WP beyond those provided in Defendants' call logs.  By contrast, Defendants' undisputed evidence shows that Beatty made his July payment on July 19, 2019.  PHH Decl. ¶¶ 48-49; *see also* Adams Decl. Ex. T (July 22, 2019 mortgage statement produced by Beatty in discovery stating that his "last full payment was applied to the payment due 7-1-2019" and thus his account was current).  Defendants also provide copies of Beatty's June and July phone records, which they say "show no evidence of telephone calls to any Defendant during the relevant time

United States District Court
Northern District of California

In sum, the record shows a single instance of misinformation provided to Beatty by PHH on June 17, which PHH corrected two days later.  The undisputed evidence also demonstrates that Beatty was informed on multiple occasions prior to the foreclosure sale that WP was the foreclosure trustee, and that Beatty had been provided with the amount needed to reinstate his loan.  On this record, no reasonable juror could conclude that Defendants intentionally engaged in acts to deliberately interfere with Beatty's ability to reinstate his loan.[10]

Accordingly, Beatty fails to show a genuine factual dispute regarding the second and fourth elements of his breach of covenant claim, entitling Defendants to summary judgment.[11]

## B.  Negligence

Beatty also fails to establish a dispute of material fact on his negligence claim.  "Under California law, '[t]he elements of negligence are: (1) defendant's obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks (duty); (2) failure to conform to that standard (breach of the duty); (3) a reasonably close connection between the defendant's conduct and resulting injuries (proximate cause); and (4) actual loss (damages).'" *Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009) (quoting *McGarry v. Sax*, 158 Cal. App. 4th 983, 994 (2008)).  The parties only dispute the first element—whether Defendants owed Beatty a duty of care.  Beatty claims that "Defendants have a duty to provide Plaintiff with accurate information concerning reinstatement and payments" and "not to sell a borrower's property at foreclosure when that borrower is current on their loan."  FAC ¶¶ 62-63; *see* Opp'n at 11-12. Defendants disagree and argue that no duty of care exists, and that the court should not "impos[e]

---

period."  Mot. at 14 n.3 (citing Adams Decl. ¶ 19, Ex. U); *see also* PHH Decl. ¶ 46 ("Other than one call on July 8, 2019 . . . there is no record of Plaintiff calling PHH" between July 8 and July 12).

[10] The parties expend much effort in debating whether Beatty "dragged his feet" and was "preoccupied" while traveling abroad instead of quickly addressing the impending foreclosure. Mot. at 17; Opp'n at 11; Reply at 8-9.  These arguments are irrelevant to whether Defendants acted in bad faith to interfere with Beatty's attempt to reinstate his loan.

[11] The court declines to reach the fifth contested element of the breach of implied covenant claim, that he was harmed by Defendants' conduct, because summary judgment is warranted on the second and fourth elements, and judgment on any single element is fatal.

negligence liability under the specific facts of this case." Mot. at 19-21.

California courts have held that "as a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1096 (1991). The general rule applies to loan servicers like PHH. *See Lingad v. Indymac Fed. Bank*, 682 F. Supp. 2d 1142, 1149-50 (E.D. Cal. 2010). "[A]bsent special circumstances . . . a loan transaction is at arms-length and there is no fiduciary relationship between the borrower and lender." *Oaks Mgmt. Corp. v. Super. Ct.*, 145 Cal. App. 4th 453, 466 (2006). This general rule has been applied in federal courts applying California law. *See, e.g.*, *Benson v. Ocwen Loan Servicing, LLC*, 562 F. App'x 567, 570 (9th Cir. 2014) ("The duty of care imposed on construction lenders . . . does not apply in the residential loan context."); *Taylor v. Bosco Credit, LLC*, No. 18-cv-06310-JSC, 2018 WL 6511150, at *4 (N.D. Cal. Dec. 11, 2018) (finding that a loan servicer did not have a duty of care to a mortgagor); *Villanueva v. Select Portfolio Servs., Inc.*, No. 14-cv-05238-BLF, 2015 WL 2199340, at *2 (N.D. Cal. May 11, 2015) (same).[12]

In *Nymark*, the California Court of Appeal applied a six-factor test laid out in *Biakanja v. Irving*, 49 Cal. 2d 657, 650 (1958), to determine whether a financial institution owed a duty of care to a borrower-client plaintiff. *Nymark*, 231 Cal. App. 3d at 1098; *see* MTD Order at 13 (restating factors). Here, the court weighs the *Biakanja* factors to determine whether Defendants owed Beatty a duty of care to provide him with accurate information about reinstatement and to avoid foreclosure. *See Nymark*, 231 Cal. App. 3d at 1095 ("Whether a legal duty exists in a given case is primarily a question of law" for the court).

The parties do not dispute the first two factors but nonetheless, the court briefly addresses them here. The first *Biakanja* factor considers the "extent to which the transaction was intended to affect the plaintiff." *Biakanja*, 49 Cal. 2d at 650. As the court previously held, "the reinstatement

---

[12]  Federal courts have relied on the *Biakanja* factors to address the question of duty in the context of loan modifications, with varying results. *See Rowland v. JPMorgan Chase Bank, N.A.*, No. 14-cv-00036-LB, 2014 WL 992005, at *8 (N.D. Cal. Mar. 12, 2014) (citing cases).

1    procedures provided by the Deed and California law are unquestionably intended to benefit the

2    borrower."  MTD Order at 17 (citing RJN Ex. 3 ¶ 19; Cal. Civ. Code § 2924c).  "Likewise, the

3    ability to make timely payments benefits both the borrower and lender, as the borrower has an

4    interest in avoiding default and [fore]closure."  *Id.*  This factor weighs in favor of imposing a

5    duty.

6        The second *Biakanja* factor considers  "the foreseeability of harm" to the plaintiff.

7    *Biakanja*, 49 Cal. 2d at 650.  "[I]t is foreseeable that failure to provide accurate information during

8    foreclosure proceedings can harm the defaulting borrower, as he is in immediate danger of losing

9    his property."  MTD Order at 17.  It is additionally foreseeable that initiating foreclosure

10   proceedings where a borrower is current on his loans would harm the borrower for the same

11   reasons.[13]  This factor also weighs in favor of imposing a duty.

12       The remaining factors, however, weigh against imposition of a duty of care.  The third

13   *Biakanja* factor considers "the degree of certainty that the plaintiff suffered injury."  *Biakanja*, 49

14   Cal. 2d at 650.  The court finds that Beatty did not establish with any degree of certainty that he

15   suffered an injury due to Defendants' conduct surrounding the 2019 foreclosure.  Beatty argues

16   that he suffered extreme stress and anxiety, characterized by "loss of appetite, fear, anger,

17   helplessness, nervousness, anxiety, sleeplessness, sadness, and depression."  Opp'n at 12.  He also

18   argues that Defendants' conduct led to the dissolution of his marriage, damage to his credit score,

19   loss of rental income after Beatty had to move into his rental property after the foreclosure, and

20   legal fees.  *Id.* at 12; *see also id.* at 5, FAC ¶ 64.[14]  Defendants counter that Beatty has not

21   substantiated that he endured any harm.  Mot. at 19-20; *see id.* at 11-14, 18-19.  The court agrees

22   with Defendants that Beatty fails to support with evidence that he was harmed to any degree of

23   certainty by any mistakes and inaccuracies Defendants made about the reinstatement procedures or

---

[13] The court notes that as previously discussed, the undisputed record shows that Beatty did not in fact timely reinstate his loan so Defendants appropriately initiated foreclosure proceedings.

[14] Beatty's operative complaint also alleges loss of income apart from rental income in his negligence claim.  FAC ¶ 64.  Defendants point to Beatty's deposition testimony to establish that, to the contrary, Beatty's income in fact increased over the relevant time period.  Mot. at 14. Beatty does not respond in his opposition, so the court deems that Beatty has conceded this issue.

United States District Court
Northern District of California

by the foreclosure sale.

First, Beatty does not substantiate his assertion that the 2019 foreclosure caused him "extreme stress and anxiety." *See* Opp'n at 5, 10-13.[15]  Beatty does not offer any facts to dispute whether and to what extent he suffered psychological or emotional harm.[16]  Beatty also fails to sufficiently distinguish the stress related to the "his marriage and personal life" and that resulting from "losing his home."  Opp'n at 5, 11-13.

Second, the record does not support Beatty's argument that foreclosure and related events "led to tension" in his marriage to his former wife Paola Sandoval[17] and "ultimately led to the dissolution of their marriage," accompanied by "stress, anger, frustations, and many emotional illnesses."  *See* Opp'n at 12.  Sandoval testified that she felt "insecure" in her marriage to Beatty starting around the 2017 foreclosure of the Property and she "didn't know anything about it" before.  Adams Decl. Ex. N ("Sandoval Dep.") at 20-21.  She testified that "[e]verything started with the house . . . in 2017, because he didn't say anything to me.  He hid[] everything, so I had to realize by other people."  *Id.* at 27.  Sandoval said she left Beatty because he was not being honest with her and did not share his financial troubles with her.  *Id.* at 33.  After the 2018 foreclosure, she felt further "insecure" and feared that "maybe we were going to be homeless."  *Id.* at 35.  At his second deposition, Beatty declared he believed his marriage was "very strong and great" prior to the 2017 foreclosure, but he admitted that he did not tell Sandoval he was delinquent on the mortgage at that time.  Adams Decl. Ex. O ("Beatty Dep. II") at 54.  He testified that he "wasn't transparent with her" and "didn't share any negative things with her," including involving financial problems.  *Id.* at 57.  He also admitted to having extramarital affairs.  *Id.* at 61.  Beatty does not offer any contrary evidence to show that the 2019 foreclosure precipitated his already faltering marriage.  The evidence instead shows that Beatty's and Sandoval's marriage began to

---

[15] While Beatty can no longer claim emotional distress damages, *see* MTD Order at 20, the court evaluates his argument of emotional harm in connection with the third *Biakanja* factor.

[16] Beatty's psychiatrist failed to comply with subpoenas for Beatty's medical records, including after he was served with a court order compelling compliance.  Adams Decl. ¶ 21.

[17] The deposition transcript notes her name as Paola Sandoval, while the accompanying declaration gives her name as Paula Beatty.  The court refers to her as Paola Sandoval.

United States District Court
Northern District of California

unravel by no later than 2017, two years before the foreclosure proceedings at the center of this lawsuit.  Furthermore, as discussed above, Beatty does not support his assertion of experiencing "many emotional illnesses" related to the dissolution of his marriage.

Third, Beatty does not put forth any evidence that he suffered damage to his credit score. *See* Mot. at 12; Opp'n at 5, 12.  Beatty testified that he "d[id not] recall ever pulling a credit report"—at least in "many years"—nor did he show that he suffered any financial damage, such as denial of credit cards or loans, specifically after the 2019 foreclosure.  Beatty Dep. II at 76-78. Beatty also does not respond to Defendants' argument that his numerous previous defaults and other loan issues could have affected his credit.  Mot. at 12-13.

Finally, Beatty has not established with any certainty that he lost rental income because of the 2019 foreclosure.  Beatty argues that because of the multiple unsubstantiated calls he made in July to PHH and WP to complete his July 1, 2019 payment, he was "left in a state of uncertainty about whether or not he would lose his home," and he was "unable to rent his rental unit."  Opp'n at 5.  Beatty presented conflicting evidence about his reasons for asking the tenant who sublet his apartment above his business to leave.  At one point, Beatty testified that he had charged the subtenant rent but discontinued the rent in exchange for the subtenant taking care of the property. *Id.* at 16-17.  At another point, he testified that he asked the subtenant to leave because he thought he would have to move into the apartment.  Beatty Dep. II at 66.  Beatty said he "had [the subtenant] leave, so he stopped getting the income from that" in July or August 2019.  *Id.*  Finally, Beatty testified that his decision to not re-rent the unit after the foreclosure was not the result of a concern about where he would live, but was due to a prospective tenant's "drug problem" and because his "business [was] growing" and he "need[ed] that space."  *Id.* at 73.

In light of Beatty's conflicting testimony, the court finds that Beatty failed to support his claims of harm with any degree of certainty.  The third *Biakanja* factor thus weighs against imposing a duty.

The fourth *Biakanja* factor considers "the closeness of the connection between the defendant's conduct and the injury suffered."  *Biakanja*, 49 Cal. 2d at 650.  Defendants contend that Beatty was provided accurate information about reinstating his loan on numerous occasions

17

prior to the five-day reinstatement deadline before the foreclosure sale.  Mot. at 20-21.  Beatty

apparently concedes that he received accurate information, which by itself weighs against

imposing a duty on Defendants to inform him of his reinstatement procedures.  Instead, Beatty

argues simply that "[w]hen Defendants sold Plaintiff's home at foreclosure, Plaintiff['s] losses

became apparent and real."  Opp'n at 12.  As the court just addressed regarding the third factor,

there is no evidence that the 2019 foreclosure harmed Beatty; moreover, the undisputed record

establishes that the foreclosure sale was successfully reversed.  Beatty has not established a

cognizable connection between the speculative injuries he claims he suffered and the actions taken

by Defendants.  This factor also weighs against imposing a duty.

    The fifth and sixth *Biakanja* factors consider "the moral blame attached to the defendant's

conduct" and "the policy of preventing future harm."  *Biakanja*, 49 Cal. 2d at 650.  The California

Court of Appeal has recognized that the modern loan servicing industry has "positive incentives to

misinform and under-inform borrowers."  *Alvarez v. BAC Home Loans Servicing, L.P.*, 228 Cal.

App. 4th 941, 949 (2014) (quotations omitted).  California has expressed a strong public policy

preference "for fostering more cooperative relations between lenders and borrowers who are at

risk of foreclosure, so that homes will not be lost."  *Jolley v. Chase Home Fin., LLC*, 213 Cal.

App. 872, 903 (2013).

    Beatty argues that Defendants are "blameworthy" and "[t]here is a public policy interest in

assuring that [a] borrower's home is not sold before an opportunity for reinstatement."  Opp'n at

12-13.  Defendants counter that a "singular" and "isolated error" that was a "genuine mistake" is

not "worthy of moral blame" and does not warrant imposing a duty of care to prevent harm to

future borrowers.  Mot. at 20-21.  As discussed above, the undisputed record shows that Beatty

was on notice of his impending foreclosure for months and that he had ample time to reinstate his

loan.  *See* PHH Decl. ¶ 33; 6/17/2019 statement; 2019 NOD; 2019 NOTS; Adams Decl. Ex. S.

PHH provided him with accurate information about his foreclosure and reinstatement but for one

phone call on June 17.  Beatty admitted at deposition that this single isolated mistake was

corrected a day later.  Beatty Dep. I at 148.  Beatty then delayed in reinstating his loan until after

the five-day reinstatement period expired.  He does not offer any evidence that he attempted to

reinstate his loan—or even sought assistance to do so—at any time up to the last few days prior to the sale.  Consequently, the foreclosure sale went forward, although it was later rescinded, and Defendants worked to unwind the sale and refund the sale proceeds.  2019 NOD Recission; PHH Decl. ¶ 47.  In sum, the record establishes that Defendants did not interfere with Beatty's opportunity to reinstate his loan and avoid foreclosure and his alleged harm.  There is no evidence to support Beatty's assertion that Defendants are worthy of moral blame or that a particular public policy to prevent future harm to borrowers is implicated here.  These factors therefore weigh against imposing a duty.

Accordingly, the court rules that the *Biakanja* factors weigh against imposing a duty of care.  Defendants are therefore entitled to summary judgment on the negligence claim.

**C.      Wrongful Foreclosure**

> To establish a claim for wrongful foreclosure, a plaintiff must show that:
> (1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale (usually but not always the trustor or mortgagor) was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering.

*In re Mortg. Elec. Registration Sys., Inc.*, 754 F.3d 772, 784 (9th Cir. 2014) (quoting *Lona v. Citibank, N.A.*, 202 Cal. App. 4th 89, 104 (2011)).

As to the first element, Defendants argue that the undisputed record shows that the 2019 foreclosure sale was not illegal or fraudulent.  The parties do not dispute that under the Deed of Trust and California law, Beatty could have avoided the foreclosure sale if he had reinstated his loan at least five days prior to the sale.  Mot. at 21; Opp'n at 14; *see* RJN Ex. 3 ¶ 19; Cal. Civ. Code § 2924c(e).  Beatty did not do so and initiated a wire transfer to reinstate his loan just one day before the foreclosure sale.  *See* 6/26/2019 Wire Transfer.  As discussed above, Beatty had notice and time to reinstate the loan after he went into default.  The foreclosure ultimately was unwound and no trustee's deed upon sale was recorded.  PHH Decl. ¶¶ 47, 50; RJN Ex. 22 (Notice of Rescission of Default, recorded July 26, 2019).  The court finds that no factual dispute remains as to whether the foreclosure sale was illegal.  Defendants are therefore entitled to summary judgment on this claim.

1        Moreover, with respect to tender, a borrower may "avoid loss of the property by tendering

2 the entire outstanding loan balance at any time prior to the sale." *Carson v. Bank of Am., N.A.*,

3 611 F. App'x 379, 380-81 (9th Cir. 2015) (citing Cal. Civ. Code §§ 2903, 2095).  Beatty does not

4 address this element in his brief and apparently concedes that he did not tender the full amount of

5 secured indebtedness due, $496.497.04—nor could he.  *See* 2019 NOTS; Beatty Dep. II at 45-46.

6 ("Q: Could you have come up with 496-thousand-dollars on June 26th of 2019? A: I do not see

7 how I could have.").

        **D.**      **UCL Claim**

9        The UCL prohibits "any unlawful, unfair or fraudulent business act or practice."  Cal. Bus.

10 & Prof. Code § 17200.   "The UCL operates as a three-pronged statute."  *Beaver v. Tarsadia*

11 *Hotels*, 816 F.3d 1170, 1177 (9th Cir. 2016).  Its "unlawfulness" prong "borrows violations of

12 other laws and treats them as unlawful practices that the unfair competition law makes

13 independently actionable."  *Id.* (quoting *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20

14 Cal. 4th 163, 180 (1999)).  Under the "unfairness prong," "[a] practice can violate [the UCL] even

15 if it is merely unfair and not unlawful."  *Pantoja v. Countrywide Home Loans*, 640 F. Supp. 2d

16 1177, 1190 (N.D. Cal. 2009).  A business practice is unfair if "offends an established public policy

17 or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to

18 consumers."  *City & Cty. of S.F. v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610, 694 (N.D. Cal.

19 2020) (quoting *Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1268 (2006)).  Beatty

20 argues UCL violations under the unlawful and unfair prongs.[18]  Opp'n at 15.  He seeks actual and

21 punitive damages, restitution, disgorgement of profits, and injunctive relief.  FAC ¶¶ 78-80.

22        "Equitable remedies (injunctive relief, restitution, and civil penalties) are the only remedies

23 available" under the UCL.  *Adir Int'l, LLC v. Starr Indem. & Liab. Co.*, 994 F.3d 1032, 1043 (9th

24 Cir. 2021).  Certain disgorgement of profits may constitute restitution if it is "meant to restore the

25 status quo by returning to the plaintiff funds in which he or she has an ownership interest."  *In re*

26 *First All. Mortg. Co.*, 471 F.3d 977, 996-98 (9th Cir. 2006).  Summary judgment may be granted

27

28   [18] The court dismissed any UCL claims under the third "fraudulent" prong.  MTD Order at 22.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   where the plaintiff's requested UCL remedies are unavailable.  *See id.* at 997-98.

2         Beatty fails to establish that he is entitled to any of his requested remedies under the UCL.

3   Actual and punitive damages are not available.  *See Adir*, 994 F.3d at 1043.  As to disgorgement

4   of profits, Beatty does not "specify the amount of these 'ill-gotten gains' to which [he has] an

5   actual ownership interest," nor does he provide any evidence that Defendants have been unjustly

6   enriched.  *First All. Mortg.*, 471 F.3d at 997.  Nor can the court order a valid injunction here as the

7   2019 foreclosure sale was unwound, the 2019 Notice of Default was rescinded, and Beatty's

8   account was brought current.  Because none of his requested remedies are cognizable under the

9   UCL, summary judgment is granted to Defendants on the UCL claim.

10  **IV.   CONCLUSION**

11        For the foregoing reasons, Defendants' motion for summary judgment is granted.  This

12  order terminates this action.  The clerk is directed to enter judgment and close the case.

13

14        **IT IS SO ORDERED.**

15  Dated: December 27, 2021

16

17  

                              Donna M. Ryu

                     United States Magistrate Judge